DIXIE DOWNS, INC., *v.* ARKANSAS RACING COMMISSION.

4-9600                                      242 S. W. 2d 132

Opinion delivered July 9, 1951.

Rehearing denied October 8, 1951.

*Eichenbaum, Walther & Scott* and *Wm. M. Moorhead,* for appellant.

*O. T. Ward, Ike Murry,* Attorney General, and *Robert Downie,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. This is an appeal from a judgment of the Pulaski Circuit Court denying appellants' petition for a writ of certiorari.

On May 25, 1948, appellant, Robert J. Boileau, as an officer and one of the three directors and stockholders of appellant, Dixie Downs, Inc., filed an application and bid with appellee, Arkansas Racing Commission, for a franchise to operate pari-mutuel wagerings on the results of horse racing in Crittenden County, Arkansas, under Act 46 of 1935, as amended. Upon filing of the application the Racing Commission advertised for sealed bids in compliance with Ark. Stats., § 84-2709. On June 21, 1948, appellant Boileau, in his own behalf and as agent for Dixie Downs, Inc., refiled the unverified application and bid for said franchise. This application stated that Dixie Downs would be incorporated at the time of the opening of the bid; that said corporation had adequate

capital to construct and operate the racing plant, the general plans for which were in the hands of the secretary of the Commission in blueprint form; and that upon receipt of a franchise the applicant would seek approval of the racing project by the voters of Crittenden County in an election on the question. Dixie Downs, Inc. came into corporate existence on April 14, 1949, when it filed articles of incorporation with the Secretary of State.

At a meeting of the Racing Commission at Hot Springs, Arkansas, on March 3, 1951, appellants' application was rejected by a vote of six to one upon a secret ballot. On April 12, 1951, appellants instituted the instant proceeding by *certiorari* in the Pulaski Circuit Court to review the action of the Commission and to quash its order of March 3, 1951, rejecting appellants' application and bid for a franchise.

The petition alleged that the action of the Commission was without legal authority in that the public, press and bidders were excluded from the meeting held on March 3, 1951, without notice to appellants; that no reasons existed for rejection of the application, which was done without consideration of any of the grounds prescribed by law. The prayer of the petition was that the circuit court enter an order quashing the action of the Commission and directing that body to act forthwith and favorably upon appellants' application for a franchise.

In their response the Commission and its individual members denied the allegations of the petition and alleged that the court was without jurisdiction of the action. Upon a hearing the trial court sustained appellees' plea of lack of jurisdiction and denied the writ.

The correctness of the trial court's decision involves an interpretation of Act 46 of 1935, as amended, which is found in Ark. Stats., §§ 84-2701—84-2723. The Act is lengthy and loosely drawn. Sections 9 and 10 of the Act (Ark. Stats., § 84-2709,-10) deal at length with rules, regulations and procedures in connection with the issuance of both franchises and licenses to hold racing meets.

The heading of § 9 (Ark. Stats., § 84-2709), as enacted by the Legislature, reads: "Acquirements (Requirements) necessary to obtain franchise to operate track and to obtain license from Commission to conduct meeting." After detailing the steps necessary for the submission of bids and applications for a franchise, it is provided in paragraph 5: "The franchise shall extend for a period of ten (10) years from the date of the acceptance of the successful bid by the Commission. The Commission shall have the right to reject any and all bids if, in its opinion, the highest bidder is not financially qualified to operate, or in the event the Commission shall determine that the bidder or the stockholders and directors of the corporation making the successful bid are not morally qualified."

It is further stipulated in this section that every franchise granted under the Act shall provide that the successful bidder shall hold a race meeting within a year from the date of the franchise and annually thereafter during the term of the franchise and that failure to conduct any such meeting shall automatically forfeit said franchise. After further setting out certain steps in connection with an application for a license to hold race meetings, it is further provided: "The Commission may, in its discretion refuse racing dates or licenses to hold a racing meeting to any franchise holder for any cause which the Commission may deem advisable in the furtherance of the public interest, or which they may deem violative of the intents and purposes of this Act."

The heading of § 10 (Ark. Stats., § 84-2710), as enacted by the Legislature, reads: "Issuance of Licenses; Hearings; Expenses Thereof." After specifying the contents of a license and enumerating other regulations pertaining to the holding of racing meets, paragraph 3 provides: "In case any license is refused or revoked by said Commission or *in case any applicant is aggrieved at the action of the Commission,* the party or parties affected by said refusal, revocation or action shall be entitled to a hearing in the manner hereinafter provided; such hearing shall be held at such place in the State of Arkansas and at such time as the Commission may designate and

notice shall be served on the party or parties affected by mailing the notice of the time and place that such hearing will be held by registered mail to the party or parties affected . . ." (Italics supplied.)

After specifying the rules and procedures to be followed in conducting such hearing, the fourth paragraph of § 10 provides: "At·the conclusion of such hearing the Commission shall make its findings to be the basis for the refusal to issue license, the revocation of a license issued, or other action taken by the Commission. Such findings shall be final, provided, however, that the section (action) of the Commission and the property (propriety) thereof shall be subject to review on questions of law only, in any Circuit Court in the County where the applicant for a license or the party or parties affected by the action of the Commission, intended or desire or applied to the Commission for a license to conduct a horse racing meeting."

It is the earnest contention of appellants that under §§ 9 and 10, *supra,* the Legislature intended to provide for a hearing and review of the rulings of the Commission by the circuit court only in the case of an application for an annual license to hold racing meetings as distinguished from an application for a franchise. While it is undisputed that appellants have never offered any evidence of their financial or moral qualifications, it is also argued that the burden was on the Commission to raise such questions before appellants' application could be properly rejected. Since, say appellants, they had no right to a hearing or an appeal from the action of the Commission, and since that body made no finding of moral or financial disqualification, then it should follow that *certiorari* lies and the trial court should have quashed the order of the Commission and ordered issuance of the franchise as a ministerial act.

We cannot agree with the assertion that an applicant for a franchise is not entitled to a hearing and review of the Commission's action thereon. It must be conceded that there is ambiguity in the statute on this point. It is noted that § 9 provides for the granting of both fran-

chises and licenses and the section is incomplete without further consideration of the provisions of § 10. Paragraph 3 of § 10 provides for a hearing and review when a license is refused or revoked, "or in case *any applicant is aggrieved at the action of the Commission. . . ."* When this language is considered in connection with the § 9 and the provisions of the entire Act, we hold that it is broad enough to include an applicant for a franchise and that the Legislature intended to grant a hearing and the right of review to an applicant for a franchise who may be aggrieved at the action of the Commission. The writ of *certiorari* lies only to review the judicial or *quasi-judicial* acts of an inferior court, board or officer. *Pine Bluff Water & Light Co.* v. *City of Pine Bluff*, 62 Ark. 196, 35 S. W. 227. Unless appellants are entitled to a hearing, considerable doubt might arise as to whether the action of the Commission in rejecting the application constituted the type of act contemplated to support a proceeding by *certiorari*. See Anno. 102 A. L. R. 534. There is nothing in the Act prohibiting the Commission in the first instance from making an independent investigation of an applicant's qualifications for a franchise. If this is done and the applicant furnishes no evidence of his qualifications, and the Commission makes no findings with reference thereto, how can a superior court on *certiorari* determine whether the Commission has acted in excess of its jurisdiction? Such is the state of the record which the circuit court was asked to review in the instant case. If a hearing is held, the reviewing court is furnished with a record from which it may intelligently determine the validity of the Commission's acts.

As we construe the statute, appellants were entitled to a hearing before the Commission if they were aggrieved at the latter's action in rejecting their application. Having failed to ask for such hearing, and without furnishing evidence of their moral and financial qualifications, appellants failed to exhaust an administrative remedy afforded by the statute. "The doctrine of exhaustion of administrative remedies requires that where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the

courts will act.'' 42 Am. Jur., Public Administrative Law, § 197. In § 202 of the same text the author states: ''It seems settled that an administrative remedy has not been exhausted by one who, prior to applying for judicial relief from an administrative determination initiated without a hearing, has not applied for such a hearing before an administrative agency, although a pertinent statute or rule, by its terms, or as construed by the administrative agency, or even as construed by the court resorted to, provides for a hearing of the aggrieved party.'' We have applied the rule of exhaustion of remedies in suits by property owners to restrain the enforcement of a zoning regulation without first exhausting the remedies provided by the zoning ordinance. *City of Little Rock* v. *Evans*, 213 Ark. 522, 212 S. W. 2d 28. It is also the general rule, subject to certain limitations, that *certiorari* will not issue if there is another adequate remedy available to petitioner. 14 C. J. S., *Certiorari*, § 37 b(1). Here appellants had an adequate remedy which they failed to pursue and their petition for a writ of *certiorari* was premature.

Under the provisions of paragraph 4 of § 10, *supra,* venue for review of the hearing to which appellants were entitled is fixed in the circuit court of the county where racing meetings are to be held, which, in this instance, is Crittenden County. Since appellants have not exhausted the remedies afforded them under the statute, the trial court correctly held that it was without jurisdiction of the *certiorari* proceeding. The judgment denying the writ is, therefore, correct and is accordingly affirmed.

GRIFFIN SMITH, C.J., concurs.