CONSUMERS CO-OP. ASSN. *v*. HILL.

5-2301                                    342 S. W. 2d 657

Opinion delivered February 6, 1961.

[Rehearing denied March 6, 1961]

*McMillen, Teague & Coates,* for appellants.

*Carpenter & Finch,* for appellee.

ED. F. MCFADDIN, Associate Justice. The appellant, Consumers Cooperative Association, is a corporation organized under the laws of the State of Kansas, with its home office in Kansas City, Missouri, and is authorized to do business in Arkansas as a foreign corporation (§ 64-1201 *et seq.,* Ark. Stats.). The appellees constitute the Liquefied Petroleum Gas Control Board of the State of Arkansas, as authorized by Act No. 18 of the Acts of the General Assembly of 1957, together with all amend-

ments[1] thereto. The appellees will be referred to as "the Board."

Appellant filed this suit in the Pulaski Chancery Court as a petition for writ of mandamus, praying for an order requiring the Board to issue to appellant a permit to allow appellant to act as a jobber in the State of Arkansas in selling to retail dealers containers for liquefied petroleum gas products. The complaint alleged that appellant had complied with all requirements of the Board and that the Board had "arbitrarily, capriciously acted in bad faith" in refusing to issue the permit; and the complaint also alleged that the plaintiff had no adequate remedy at law "to protect itself from the injustice foisted upon it" by the Board's refusal to grant a permit. After hearing all the evidence the Chancery Court denied the petition of the appellant, saying "The plaintiff has failed to show that it has no adequate remedy at law, and has failed to show that its other remedies have been exhausted; the plaintiff has failed to prove that it is entitled to a writ of mandamus against the defendant board . . ." From such decree comes this appeal; and appellant urges only one point: "the Chancery Court erred in dismissing appellant's petition for a writ of mandamus . . ."

There have been a series of legislative enactments concerning the sale and use of liquefied petroleum gas containers and equipment. By Act No. 165 of 1947, the Legislature enacted the "Liquefied Petroleum Gases Control Act." The enforcement of that act was in the Boiler Inspection Department of the State of Arkansas. Section 2(c), (e), and (f) of the act contain the following definitions:

"(c) CONTAINER means any tank or vessel in which liquefied petroleum gases are stored or transported or in which liquefied petroleum gases are placed for utilization through a liquefied petroleum gas system, ex-

---

[1] See, *inter alia*, Act No. 257 of 1957, Act No. 414 of 1957, and Act No. 76 of 1959. This last mentioned Act was adopted after the situation arose in this case.

cept containers used in marine or railroad service which are inspected under federal law or regulation. . . .

"(e) MANUFACTURER means any person manufacturing any container offered for sale in this state.

"(f) JOBBER means any person other than a manufacturer who sells or offers for sale to dealers containers and/or liquefied petroleum gases."

Act No. 18 of 1957 transferred to the Board all the functions, powers, and duties conferred, by Act 165 of 1947, on the Boiler Inspection Division of the Department of Labor. By said Act 18 of 1957, the Board was also given authority to promulgate rules and regulations within the scope of its statutory authority. Such rules were promulgated on April 1, 1958, and are the rules that were governing at the time of the matters contained in this case.

The background facts of this litigation are somewhat confusing. Without any permit from the Board, appellant (hereinafter called "Consumers") had some tanks shipped into Arkansas for sale to a dealer at Van Buren. These tanks were shipped to a person who had no permit to sell tanks for use in Arkansas. When the Board learned of this violation, the tanks were tagged with a danger flag and, after several months, were removed from the State. Consumers then applied to the Board for a permit to sell tanks in Arkansas as a jobber. Contemporaneously, "R. & R. Tank Company, Inc.," of Pratt, Kansas, made application for a permit to manufacture tanks to be sold and used in Arkansas. The relation between "R. & R. Tank Company, Inc." and Consumers is very close. Consumers owns all of the plant and equipment of "R. & R. Tank Company, Inc.," and leases said plant and equipment to "R. & R. Tank Company, Inc." for use in the manufacture of tanks. Consumers actually forwarded to the Board the blueprints and specifications of the tanks that the "R. & R. Tank Company, Inc." proposed to manufacture for sale in Arkansas.

Several hearings were held by the Board with representatives of Consumers present. As to what transpired at the various hearings, the oral testimony is in dispute, and the minutes of the Board's meetings were not introduced. At all events, the Board sent its inspector to Pratt, Kansas to inspect the plant and products of the "R. & R. Tank Company, Inc." and found the tanks which were being manufactured at that time to be deficient in many respects. These tanks might have satisfied the requirements of other states, but they did not satisfy the requirements of Arkansas as to double welding and several other matters. Not only were the inspected tanks below Arkansas' requirements, but the plans and specifications submitted to the Board were also below Arkansas' requirements. The tanks that "R. & R. Tank Company, Inc." was manufacturing bore the name and metal label of the appellant, "Consumers Cooperative Association, Kansas City, Mo." As a result of the report of the inspector, the Board denied the application of the "R. & R. Tank Company, Inc." for a manufacturer's permit, and also the application of Consumers for a jobber's permit. After a lapse of five or six months, Consumers filed this mandamus action in the Pulaski Chancery Court.

I. *Jurisdiction of Equity*. The Chancery Court held that Consumers had not exhausted its remedy at law; and, with that holding, we agree. Equity will not take jurisdiction to grant relief when there is an adequate and complete remedy in law. *Cummins* v. *Bentley*, 5 Ark. 9; *Crane* v. *Randolph*, 30 Ark. 579; *Chapman & Dewey* v. *Osceola Dist.*, 127 Ark. 318, 191 S. W. 220; *Bassett* v. *Mutual Benefit*, 178 Ark. 906, 12 S. W. 2d 893. In this case, Consumers remedy was for a writ of *certiorari* in the law court. In *Hall* v. *Bledsoe*, 126 Ark. 125, 189 S. W. 1041, we held that *certiorari* in the Circuit Court was the available remedy to review the decision of an administrative board where it was claimed that the board had exceeded its jurisdiction or proceeded illegally and when there

was no appeal provided by statute.[2] We cannot treat this present suit for mandamus as a substitute for *certiorari* because the minutes and proceedings of the Board are not in the record before us and there is dispute as to many matters that are claimed to have transpired before the Board. In addition to *Hall* v. *Bledsoe, supra,* there are other cases holding that *certiorari* from the Circuit Court in such instances is the proper remedy. See also *Mitchell* v. *Directors of School Dist.,* 153 Ark. 50, 239 S. W. 371.

II. *The Remedy of Mandamus.* The Chancery Court held that Consumers had failed to prove that it was entitled to a writ of mandamus; and with that holding we agree. The rule in this State is, that mandamus is only a limited remedy. (See article in 11 Ark. Law Review, p. 351 *et seq.,* entitled, ''Mandamus to Review Administrative Action in Arkansas.'') Certainly a writ of mandamus will not lie to control the discretion of an officer or board in issuing a permit. See *Better Way Life Ins. Co.* v. *Graves,* 210 Ark. 13, 194 S. W. 2d 10. By statute, the appellee Board, in the case at bar, was vested with discretion to investigate and consider applications of manufacturers and jobbers, and also to provide rules and regulations governing the specifications of containers to be sold in this State. As long as the Board had discretion and acted, mandamus is not a remedy available to a dissatisfied applicant seeking to review the action of the Board.

III. *Exhausting Administrative Remedies.* The rule is well established that a litigant must exhaust his administrative remedies before instituting litigation to challenge the action of the administrative agency. *Dixie Downs* v. *Ark. Racing Comm.,* 219 Ark. 356, 242 S. W. 2d 132; *City of Little Rock* v. *Hunter,* 216 Ark. 916, 228 S. W. 2d 58; *City of Little Rock* v. *Evans,* 213 Ark. 522, 212 S. W. 2d 28. This rule finds application in the case at bar; and gives the appellant a further opportunity to seek a

---

[2] As aforesaid, Act No. 76 of 1959 was not governing when Consumers filed this suit in Pulaski Chancery Court on February 24, 1959, so there was no specific statute providing for appeal from a decision of the Board.

permit. In the rules promulgated by the Board[3] under date of April 1, 1958, Section V relates to applications, and prescribes in detail the essentials and requirements. Sub-section 10 of Section V provides that any person, firm, or corporation who has made an application for a permit and ''whose request for permit has been denied, may re-submit application but it shall not be considered for a period of 90 days, after date of denial.''

Appellant claims that its application for a jobber's permit was entirely separate and distinct from the application of ''R. & R. Tank Company, Inc.'' for a manufacturer's permit; but we are convinced that such contention was never made clear to the Board, and that the Board was of the opinion that Consumers intended to sell only the tanks manufactured by ''R. & R. Tank Company, Inc.'' which bore the name plate of ''Consumers Cooperative Association,[4] Kansas City, Missouri.'' As aforesaid, these tanks did not comply with the Arkansas requirements. Consumers now insists that if granted a jobber's permit it will sell tanks that are manufactured by persons and corporations who hold manufacturers' permits issued by the Board. If Consumers had made that contention to the Board as strongly as it now makes it in the brief, a different result might have been reached. So the rule for reapplying at the end of 90 days is applicable here. Instead of filing a mandamus action, as it did, Consumers could have clarified the situation with the Board by reapplying for a jobber's permit, and listing the name of the authorized dealers from whom it would obtain tanks as a jobber. Consumers did not elect to reapply: therefore, it has not exhausted its administrative remedy under the facts in this case.

We therefore affirm the decree of the Chancery Court, but without prejudice to the right of Consumers to reapply for a jobber's permit, definitely stating that

---

[3] There is a subsequent set of rules promulgated on April 1, 1960, but this case is tested by the rules of April 1, 1958.

[4] The rule required the name of the manufacturer to be shown.

it will sell tanks manufactured only by companies who hold manufacturers' permits issued by. the Board.

Affirmed.