CITY OF JONESBORO *v.* Floyd VUNCANNON, et ux.

91-319                                              837 S.W.2d 286

Supreme Court of Arkansas
Opinion delivered July 20, 1992
[Supplemental Opinion on Denial of Rehearing
September 28, 1992.*]

*Hays, Glaze, and Corbin, JJ., would grant rehearing.

*Penix, Penix & Lusby*, by: *Bill Penix* and *Robin Nix*, for appellant.

*Kelley Webb*, for appellees.

DAVID NEWBERN, Justice. This is an inverse condemnation case. The Circuit Court awarded the appellees, Floyd and Cathy Vuncannon, $5,282.90 in damages for land taken by the appellant, City of Jonesboro. The Vuncannons' claims for $105,041.68 for lost rental, removal of debris, increased interest costs, interest accrued, and attorney's fees were denied on the ground that they were based on tort liability from which the City was immune. The City appeals from the condemnation award, raising a number of issues, all of which are placed under the rubric, "abuse of discretion." The Vuncannons cross-appeal from the denial of the other claims. We find no abuse of discretion and affirm the inverse condemnation award. We also affirm on cross-appeal.

The Vuncannons own two contiguous partial lots, one on either side of a whole lot, also owned by them, in a platted area known as Turtle Creek Ranch Addition in Jonesboro. The north property line of all three parcels abutts Nettleton Avenue. The Vuncannons wished to build a shopping center. To do so, using the lot and the two partial lots, regulations required replatting the three parcels into one lot. Otherwise, no building could be constructed absent fire walls built on the property lines between the lot and the partial lots.

When the Vuncannons applied to have the land replatted, their survey showed the north border of their lot and partial lots to be 41 feet from the center of Nettleton Avenue. The Jonesboro Metropolitan Area Planning Commission (MAPC) consulted its major street plan which showed the Nettleton right of way to be 100 feet, thus requiring a distance of 50 feet from the center line of Nettleton to the Vuncannons' property. MAPC refused to

authorize the replatting unless the Vuncannons dedicated the additional nine feet as street right of way. Here is a chronology of events.

March 10, 1988: The Vuncannons first presented the request for replatting the three lots to MAPC. MAPC approved the request on the condition the additional nine feet be dedicated.

May 12, 1988: The Vuncannons returned to MAPC for reconsideration. MAPC refused.

October 11, 1988: The Vuncannons again requested MAPC reconsideration. MAPC refused.

November 21, 1988: The Vuncannons attempted to appeal to the Jonesboro City Council. The City Council refused to hear the appeal.

January 13, 1989: The Vuncannons filed suit in Circuit Court alleging that the city of Jonesboro inversely condemned the property.

April 7, 1989: The Vuncannons and the City entered into a stipulation by which the Vuncannons would deed the nine feet to the City and the City would replat the property and issue a building permit. The stipulation stated it was not meant to affect in any way the outcome of the pending action. Mr. Vuncannon testified he sent the deed to the City after the stipulation was entered and soon thereafter the property was replatted and a building permit was issued.

December 1989: The Vuncannons completed construction of the shopping center which, Mr. Vuncannon later testified, was built nine feet further from Nettleton Avenue than originally planned.

June 19, 1990: The Circuit Court "remanded" the case to the City for reconsideration of the replatting on the basis that denial of the replatting only on the basis of the refusal to convey the nine feet was a taking without just compensation.

September 17, 1990: The City Council discussed the matter, quitclaimed the nine feet back to the Vuncannons, and when asked, the Mayor stated the City refused to pay damages for temporary taking of the property.

October 3, 1990: The Vuncannons appealed to Circuit Court the City's refusal to pay damages.

February 20, 1991: The Circuit Court entered judgment in favor of the Vuncannons in the amount of $5,282.90, as the fair market value of the nine feet taken by the City, ordering the Vuncannons to deed the property to the City. It was found, however, that the lost rental, debris removal, increased interest costs, interest accrued, and the attorney's fee were for tort recoveries to which the City was immune.

The City contends (1) the Circuit Court did not have the power to conduct a de novo review of the city council's action as there was no final action by the City, (2) The Vuncannons did not exhaust administrative remedies prior to appealing to the Circuit Court, (3) Ark. Code Ann. 14-56-117(b)(2)(B) (1987) is not unconstitutional, (4) there was no inverse condemnation because the property is not worthless as a result of its actions, and (5) there was no proof that the nine feet was ever taken and in fact the Vuncannons are currently utilizing the property.

The Vuncannons argue the Trial Court was correct in finding the City took the nine feet and, therefore, owed the fair market value of the land. They contend (1) there was a final order of the City Council which the Circuit Court could review *de novo*, (2) all administrative remedies were exhausted as they were told to wait six months before returning for reconsideration of the replat denial, (3) the Trial Court did not find Ark. Code Ann. § 14-56-117(b)(2)(B) unconstitutional, but rather applied the law on controlled access facilities, Ark. Code Ann. § 27-68-100 through 27-68-111 (1987), (4) inverse condemnation occurred because the building was constructed nine feet further back due to the dispute and that nine feet was not useable or being used by the Vuncannons, and (5) the property was taken to construct a five-lane street but there was no evidence that a five-lane street will ever be built.

## 1. De novo review

The City contends the Trial Court erred in conducting a *de novo* review of the appeal from the City Council rather than seeking to ascertain whether the City Council abused its discretion, the standard to be used in reviewing the actions of a

legislative body.

■■ Arkansas Code Ann. § 14-56-425 (1987) provides for a *de novo* review in circuit court of appeal of final actions of administrative and quasi-judicial agencies. Although *de novo* review of a legislative act is unconstitutional, *Wenderoth* v. *City of Ft. Smith*, 251 Ark. 342, 472 S.W.2d 74 (1971), it is proper to review *de novo* a final action of an agency acting in an administrative or quasi-judicial mode. *See Gorman Towers, Inc.* v. *Bogoslavsky*, 626 F.2d 607 (8th Cir. 1980). It is clear that the appeal to the Circuit Court here was from action of the City Council on application of its zoning regulations rather than from the enactment of them.

### 2. Exhaustion of administration remedies

The City next argues the Vuncannons did not exhaust administrative remedies prior to seeking a remedy in court, citing *Chaney* v. *East Texas Motor Freight, Inc.*, 233 Ark. 675, 346 S.W.2d 513 (1961), and *Consumer's Co-op Assn.* v. *Hill*, 233 Ark. 59, 342 S.W.2d 657 (1961). It is pointed out that after MAPC denied the replatting on October 11, 1988, the City Council voted on November 21, 1988, not to consider the appeal because the appeal had not been filed with the City Clerk within the 30 day time limit required by Jonesboro City Ordinance No. 2.20.06.

■ The City Council minutes of November 21, 1988, were introduced as Exhibit D at p. 136 of the record of trial. The relevant paragraph of the minutes is as follows:

> The Chairman of the Street Committee, Mr. Bridger, introduced a request from Kelley Webb, Attorney for Floyd Vuncannon regarding property located at East 56.25 ft. of Lot 3, all of Lot 4, and the West half of Lot 5, of Charles A. Stuck's Turtle Creek Ranch Addition, to the City of Jonesboro, Arkansas, as shown by plat and record in Deed Record Book #48 on Page 240. Mayor Brodell stated the matter was first heard by the MAPC on March 10, 1988. The Appeal request was not filed with the City Clerk in the required 30-day time limit by ordinance. Mr. Webb presented the matter on behalf of Mr. Vuncannon on October 11, 1988, however, the MAPC voted unani-

mously not to reconsider the request. Mr. Park moved, seconded by Dr. Strauser not to reconsider the request. A roll call was taken and all voted aye.

It is thus clear that the reference to failure to meet the 30-day appeal deadline had to do with the original request to MAPC and not to its second decision in which it denied reconsideration. The fact that the City Council did not vote on the matter until November 21, 1988, does not mean that the appeal of the October 11, 1988, decision was not lodged within 30 days. The City thus has failed to show that the Vuncannons did not exhaust their administrative remedies.

### 3. Statutory authority

The heart of the City's appeal lies in the argument that it had statutory authority to force the Vuncannons to dedicate property for the eventual widening of Nettleton Avenue.

■ The first citation is to Ark. Code Ann. § 14-56-401 (1987) which provides that Subchapter 4 of Chapter 56 of Title 14 is to be interpreted liberally and provides the general powers and duties of a planning commission. It states that a commission may draw up a master street plan.

■■ Next, the City cites Ark. Code Ann. § 14-56-412(e) (1987) which gives a city planning commission authority to regulate to implement its master street plan. Subsection (g) of § 14-56-412, however, provides for referral to the body responsible for acquisition of the land necessary to carry out the plan. It states, in part:

> After adoption and filing as provided of a . . . master street plan, no parcel of land indicated by the plan which lies within the bounds of a . . . mapped street shall be privately developed until the public board commission, or body having jurisdiction or financial responsibility for the reserved area shall have refused to execute a written option or to file suit for condemnation to acquire the area . . . .

This Statute obviously contemplates purchase or condemnation of land by the City. In either case, the owner is to be compensated by money rather than waiver of some safety regulation, such as a fire wall requirement, completely irrelevant to the acquisition of

land to widen a street.

The last of the statutes relied on by the City is Ark. Code Ann. § 14-56-417(b)(2)(B) (1987). Section 14-56-417 is captioned, "Regulations to control development of land." The entire section provides:

(a)(1) Following adoption and filing of a master street plan, the commission may prepare and shall administer, after approval of the legislative body, regulations controlling the development of land.

(2) The development of land includes, but is not limited to:

(A) The provision of access to lots and parcels;

(B) The extension or provision of utilities;

(C) The subdividing of land into lots and blocks; and

(D) The parceling of land resulting in the need for access and utilities.

(b)(1) The regulations controling the development of land may establish or provide for the minimum requirements as to:

(A) Information to be included on the plat filed for record;

(B) The design and layout of the subdivision, including standards for lots and blocks, street rights-of-way, street and utility grades, and other similar items; and

(C) The standards for improvements to be installed by the developer at his own expense such as street grading and paving; curbs, gutters, and sidewalks; water, storm, and sewer mains; street lighting; and other amenities.

(2)(A) The regulations may permit the developer to post a performance bond in lieu of actual installation of required improvements before plat approval.

(B) They may provide for the dedication of all rights-of-way to the public.

(3)(A) The regulations may govern lot or parcel splits, which is the dividing of an existing lot or parcel into two (2) or more lots or parcels.

■ Section 14-56-417 thus gives a planning commission authority to promulgate a regulation "controlling development of land" which requires dedication of rights-of-way to the public. If a replatting of land to combine lots as the Vuncannons wished to do constitutes "development of land" under a valid regulation, then the Statute could provide authority for requiring reasonable rights-of-way dedication. Obviously the "development of land" contemplated in the subsection (a)(2)(A) through (D) has to do with land which is not yet developed. That was the situation in *Newton, Circuit Clerk* v. *American Security Co.*, 201 Ark. 943, 148 S.W.2d 311 (1941), which is cited by the City. No one questions the power of the City to require dedication of rights-of-way in land which is the subject of an initial subdivision plat. References in the record make it unmistakable that the Vuncannons' property is part of land which has already been platted as Turtle Creek Ranch Addition.

We do not know if the Jonesboro Planning Commission has a regulation governing the replatting of land. We have no idea whether a replatting of land which has already been the subject of a platted addition constitutes "development of land" under an applicable regulation. The point is that the Statute gives authority to promulgate a regulation. It does not directly authorize taking land without compensation, nor does it authorize the trading of a waiver of a zoning fire safety requirement for a right of way dedication.

### 4. Constitutionality and other statutes

■ We agree with the City's contention that § 14-56-417 is not unconstitutional per se. At the end of the final hearing in the Circuit Court, the Judge said he thought it was unconstitutional. We do not know if he meant that there was a lack of due process because the City had not shown it had enacted a regulation in accordance with the Statute or possibly that there was no showing that some regulation existed prior to the Vuncannons' acquisition of the land. *See Lucas* v. *South Carolina Coastal Council*, ___ U.S. ___ (No. 91-453, decided June 29, 1992).

We decline to address the constitutionality point because we need not go that far. Our holding is simply that the City has demonstrated no authority for what it attempted to do.

■ We also agree with the City's point the Vuncannons are wrong in arguing that Ark. Code Ann. §§ 27-68-100 through 27-68-111 (1987) control this situation. That Subchapter of Title 27 deals with limited access highways, and there is no showing that Nettleton Avenue is such a highway. Again, however, the error in argument does not cure the basic deficiency of the City's position on appeal.

### 5. Cross-appeal

■ We understand and sympathize with the losses of which the Vuncannons complain on cross-appeal. We concur in the Trial Court's assessment that the Vuncannons were caught up in a bureaucratic delay. They have, however, presented no statutory or common law authority dealing directly or indirectly with their expenses and attorney's fee and permitting the Trial Court to make any award other than just compensation for the loss of their property. Absent a showing of such authority, we will not reverse the Trial Court.

Affirmed on Appeal and Affirmed on Cross-Appeal.

HAYS, GLAZE, and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. Because of their eagerness to affirm this case, the four-member majority court first rejected the only two theories the landowners, Vuncannons, argued below and on appeal. First, Vuncannons argued entitlement to compensation for their nine-foot strip of land abutting Nettleton Avenue because the taking of the property by the city constituted inverse condemnation. Second, they claimed Nettleton Avenue was a controlled-access street and that applicable law providing for acquiring property accessing such a street requires payment of compensation to the landowner. The majority court agrees, as I do, that neither of these theories have merit. But, instead of reversing and remanding this case as it should, the majority court offers a third legal theory under which Vuncannons' award should be sustained. In doing so, it is not only dead wrong in its analysis of the law, it condescendingly presumes neither the attorneys for the respective parties nor the trial judge understood how to present or try this case.

Undisputedly, the city's major street plan requires a one hundred-foot right-of-way for Nettleton Avenue which abuts

Vuncannons' lots. The city's action in this respect is authorized by Ark. Code. Ann. §§ 14-56-417(b)(1)(A) and (B) and (b)(2)(B) (1987). Because of the rapid proliferation of subdivisions, legislatures, including Arkansas's, have required developers to dedicate a portion of their land for certain public purposes, such as streets, parks, and schools, as a prerequisite to approval of their plot or subdivision. E. McQuillan, *The Law of Municipal Corporations*, § 33.05.10 (1991).

The majority court asserts that neither the Vuncannons nor their predecessors in title have ever dedicated their lots alongside Nettleton Avenue and that, because no such dedication previously took place, the city cannot now require such a right-of-way without compensation. The court cites no law for this declaration, and I suggests its failure to do so is because no such requirement exists. In fact, § 14-56-414(d) (1987) reflects the contrary is true. That provision provides as follows:

> (d)(1)   Master Street Plan. The commission may prepare and adopt a master street plan which shall designate the general location, characteristics, and functions of streets and highways.
>
> (2)(A)   *The plan shall include the general locations of streets and highways to be reserved for future public acquisition.*
>
> (B)   *The plan may provide for* the removal, relocation, *widening*, narrowing, vacating, abandonment, *and change of use or extension of any public ways.*

Here, the City of Jonesboro provided a one-hundred foot right-of-way along Nettleton Avenue, which borders Vuncannons' lots, in Turtle Creek Ranch Addition, which is a part of the city. The city's plan provided a right-of-way for the avenue so the avenue could be widened in the future. In seeking replat of their lots into one, the plat the Vuncannons submitted to the Metropolitan Area Planning Commission was erroneous because it failed to comply with the city's street plan and it did not reflect the one hundred-foot right of way along Nettleton Avenue. In other words, all the city asked the Vuncannons to do was to correct their plat so as to show the entire right-of-way rather than the forty-one feet their erroneous plat reflected. Contrary to the majority

court's view of it, there is no meaningful distinction between the case here and this court's decision in *Newton, Circuit Clerk* v. *American Security Company*, 201 Ark. 943, 148 S.W.2d 311 (1941). In *Newton*, the court upheld the Pulaski County Planning Board's decision to withhold approval of the property owner's plat until the owner dedicated an additional ten-foot strip of land abutting a county road so the minimum right-of-way requirement contained in the county road master plan was met.

As I read the majority opinion, the city need not pay compensation for dedicated streets, rights-of-way and set backs if such public acquisitions are dedicated and in use at the time a subdivision is added to the city. However, compensation must be paid a property owner with a strip of land located within a right-of-way or set back shown on a city's master street plan if that strip of land was not in actual use when the subdivision was accepted by the city.

In the present case, Nettleton Avenue has a one hundred-foot right-of-way, but only part of it is used for street purposes; the remaining part of the right-of-way was reserved by the city for widening into a five-lane street when traffic increased. Of course, the Planning Commission anticipated such an increase in traffic and the Vuncannons' building a shopping center abutting Nettleton Avenue reflects and enhances the anticipated increase.

In conclusion, if the parties had known the legal theory upon which the majority members of this court would decide this case, I have no doubt that the city and the Vuncannons would have presented evidence specifically bearing on such a theory. The parties and the trial judge will be amazed when reading the majority opinion and will, I conjecture, barely recognize this case as the one they tried. Worse yet, municipal officials will be left scratching their heads wondering what our court has done to existing statutory law bearing on subdivision master street plans, rights-of-way and set backs.

Because I would reverse and remand this case, I dissent.

HAYS and CORBIN, JJ., join this dissent.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
SEPTEMBER 28, 1992

*Bill Penix* and *J. Robin Nix II*, for appellant.

*Kelley Webb*, for appellees.

PER CURIAM. Appellant's and appellees' petition for rehearing are denied.

TOM GLAZE, Justice, dissenting. Both parties petition for rehearing. The Vuncannons believe they are entitled to attorney's fees because such fees should be authorized to inverse condemnation cases. While the Vuncannons filed and pursued this matter as an inverse condemnation case, it was not — as I pointed out in my earlier dissent — decided on that theory. The majority opinion initially describes this case as an inverse condemnation case, but no further mention of inverse condemnation is found in the opinion. The opinion more accurately should read that the Vuncannons *brought this suit* against the City of Jonesboro as one for inverse condemnation.[1] Because the majority decided this cause on another theory, the Vuncannons' argument for attorney's fees on an inverse condemnation basis is misdirected, and must be denied on this basis alone.

In its petition for rehearing, the City of Jonesboro urges the four-member majority misreads and misapplies the statutory law cited in its opinion. While I agree, I have already addressed this point in my earlier dissent and need say no more on that subject. The city's petition does prompt me to mention one brief point, however.

The majority opinion specifically concedes that neither party in this cause questions the city's power to require dedication of rights-of-way in land which is the subject of an initial subdivision plat or development of land. The majority further stated the Vuncannons' property had been platted, but then

---

[1] To have inverse condemnation, the reasonable commercial use of the property allegedly taken must have been substantially diminished or destroyed. Here, the Vuncannons built the same building they would have built before and are using the disputed nine feet for parking and signs for the shopping center.

mused the majority did not know if the city had a regulation governing the replatting of land or whether that regulation, concerning replatting, by its terms constituted "development of land" under Ark. Code Ann. §§ 14-56-412 and -417 (1987). The city in its rehearing petition announces it *does* have regulations governing the replatting of land, the regulations define the terms *subdivision* and *development*, but the city did not put these regulations into evidence because the regulations were not relevant to the two theories — inverse condemnation and controlled access facility — asserted by the Vuncannons in their cause of action.

The city's revelation in this respect merely underscores the point I offered in my earlier dissent — "[I]f the parties had known the legal theory upon which the majority members of the court would decide this case, I have no doubt that the city and the Vuncannons would have presented evidence specifically bearing on such a theory." This court should have reversed and remanded this case in order to allow both parties the opportunity to address and to offer evidence on the theory the majority court, itself, raised and upon which the court decided this case. Due process requires it.

HAYS and CORBIN, join this dissenting opinion.