# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-4199

_____

| | | |
|---|---|---|
| Night Clubs, Inc., doing business as Regina's House of Dolls, II, | * * * | |
| Appellant, | * * | |
| v. | * * * | Appeal from the United States District Court for the Western District of Arkansas. |
| City of Fort Smith, Arkansas; William W. Harding, Individually and as Director of Planning; Michael Fisher, Individually and as Commissioner; James Damron, individually and as Commissioner; John E. Keller, Individually and as Commissioner; George McGill, Individually and as Commissioner; Jack Grober, Individually and as Commissioner; Ronald W. Rouse, Individually and as Commissioner; Lawrence A. Devero, Individually and as Commissioner; Lynn V. Snider, Individually and as Commissioner; Robert J. Mulson, Jr., Individually and as Commissioner; Fort Smith Planning Commission, | * * * * * * * * * * * * * * * * * * | |
| Appellees. | * | |

_____

Submitted: May 14, 1998
Filed: December 14, 1998

_____

Before BOWMAN, Chief Judge, HEANEY and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

Night Clubs, Inc., doing business as Regina's House of Dolls II (Regina's), appeals from the district court's dismissal with prejudice of its federal civil rights action. Regina's argues that the district court erred in abstaining under the Younger doctrine,[1] and that even if Younger abstention was appropriate, dismissal with prejudice was not. We affirm the district court's decision to abstain pursuant to Younger, but we vacate the dismissal and remand for the entry of a stay. We grant both parties' motions to supplement the record.

I.

Regina's leases certain property located at 7900 Highway 71 in Fort Smith, Arkansas. The leased property is zoned as "Commercial-5," a designation which allows Regina's to engage in "retail uses that serve the motoring public" and are "characterized by a high level of vehicular activity." Fort Smith Mun. Code § 27-180. On March 20, 1997, Regina's filed a Business Registration Application with the City of Fort Smith (the City), requesting permission to open a nightclub on the property. Because nightclubs are listed as allowable on land zoned as Commercial-5, see Fort Smith Mun. Code § 27-106, the Fort Smith Planning Commission approved the application. Less than two weeks later, on April 1, 1997, Regina's filed a second

_____

[1]The Younger abstention doctrine, which has its roots in Younger v. Harris, 401 U.S. 37 (1971), directs federal courts to abstain from accepting jurisdiction in cases where equitable relief is requested and where granting such relief would interfere with pending state proceedings in such a way as to offend principles of comity and federalism. See American Nat'l Bank v. Parkman, 702 F. Supp. 168, 170 (N.D. Ill. 1988).

application, this time requesting permission to open an exotic (i.e., nude) dancing facility at the same location.

The staff at the Planning Commission determined that exotic dancing was not a "listed commercial entertainment use" within the meaning of sections 27-96 and 27-106 of the zoning ordinance.[2]  Pursuant to section 27-97 of the zoning ordinance, the matter was referred to William W. Harding, the Director of Planning, for "an administrative decision as to the appropriate zones" in which nude dancing, an unlisted use, would be allowed.  Before rendering a decision, Harding consulted with the City Attorney, who informed Harding that a total ban would probably not survive a court challenge.  (Jt. App. at 502.)  Harding determined that nude dancing would be permissible only in property designated as Commercial-5-SPL-D, a zoning classification reserved for uses serving "the motoring public" which "are characterized by a higher level of vehicular activity."  Fort Smith Mun. Code § 27-181(a) (emphasis added).  At the time of his decision, only one one-half acre plot of land in Fort Smith was zoned as Commercial-5-SPL-D.  (Jt. App. at 502.)  Harding explained his decision in the following way in his letter to Regina Capps, owner of Regina's:

> As outlined within the procedures of [section 27-97,] in my capacity of [sic] Director of Planning I have made an administrative decision that exotic dancing facilities and adult oriented businesses shall be assigned to the Commercial-5-SPL-D zoning district.  This decision is made as the

---

[2]The zoning ordinance is reproduced at pages 332-357 of the joint appendix. Section 27-106 of the ordinance is a schedule listing various commercial entertainment uses and noting their zoning classifications.  Among these is "dance halls, night clubs, or discotheques," but no listed use mentions nude or exotic dancing or any form of "adult" entertainment.  The ordinance defines "dance halls, night clubs, or discotheques" to mean "an establishment whose primary activity is the provision of facilities for dancing and live entertainment or amplified music.  Such establishment may or may not provide on-premises consumption of alcoholic beverage."  Fort Smith Mun. Code § 27-2.

four Commercial-5 special use zones are categorized by virtue of the use intensities within the respective categories. Intensities are evaluated on the basis of anticipated traffic and/or pedestrian movements associated with a particular use and other characteristics relative to the impact to surrounding property.

(Jt. App. at 319.) Harding went on to explain that because the property at 7900 Highway 71 was zoned Commercial-5, the property did not qualify for the intended use. Accordingly, Harding informed Capps that the application for a business license had been denied. (Id.)

Regina's appealed Harding's decision to the full Planning Commission. See Fort Smith Mun. Code § 27-97(3). Pursuant to § 27-97(4), the Commission was required to consider "the nature of the proposed use and its compatibility with uses permitted in the zones for which the use is proposed" before it rendered its decision. Accordingly, the Commission held a public hearing, at which it solicited arguments from counsel and comments from citizens in attendance. Regina's attorney argued that Harding's decision conflicted with the plain meaning of the Municipal Ordinance and the First Amendment to the United States Constitution. (Jt. App. at 368, 385.) After the discussion concluded, the Commission voted unanimously to affirm Harding's decision denying Regina's application.

Pursuant to Fort Smith Municipal Code section 27-97(5) and Arkansas Code Annotated section 14-56-425 (1987), Regina's filed a lawsuit in Sebastian County Circuit Court for review of the Planning Commission's decision. This suit was filed on June 12, 1997. The original complaint alleged federal constitutional violations in addition to state law claims, but Regina's voluntarily amended the complaint and eliminated the federal constitutional claims. On October 15, 1997, the Sebastian County Circuit Court ruled that Regina's had failed to perfect its appeal from the Planning Commission's decision; accordingly, it dismissed Regina's state action. Regina's filed a notice of appeal on November 14, 1997, arguing that the state's

perfection rules are unconstitutionally vague. This appeal was pending before the Supreme Court of Arkansas at the time this case was submitted.

On July 24, 1997, Regina's filed a civil rights action under 42 U.S.C. § 1983 in federal district court, naming as defendants the City of Fort Smith, various members of the Planning Commission, and the Planning Commission itself.[3] Regina's federal complaint alleges violations of its First Amendment rights and requests monetary damages in addition to injunctive relief. On August 6, 1997, the City filed a motion to dismiss Regina's federal suit, arguing that the district court should abstain from accepting jurisdiction in deference to the ongoing state proceeding. On September 3, 1997, the district court granted the City's motion and dismissed Regina's federal action with prejudice, relying on the Younger doctrine. After the state circuit court dismissed Regina's appeal, Regina's filed a motion for amendment of judgment and new trial in federal district court, contending that there was now no ongoing state court proceeding to support Younger abstention. The motion was denied. Regina's appeals, arguing that the Younger doctrine is inapplicable and that, in any case, dismissal with prejudice was inappropriate.

II.

The Supreme Court recently affirmed that federal courts "'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given,'" and that "'[t]he one or the other would be treason to the Constitution.'" New Orleans Pub. Serv., Inc. v. New Orleans, 491 U.S. 350, 358 (1989) (NOPSI) (quoting Cohens v. Virginia, 6 Wheat. 264, 404 (1821)). This is true because "Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." Id. at 359. The Court stressed in NOPSI that the federal courts' "virtually unflagging" duty to exercise jurisdiction "does not eliminate . . . the federal

---

[3]We refer to the defendants collectively as "the City" throughout.

courts' discretion in determining whether to grant certain types of relief." Id. (internal quotations omitted). The common law discretion of courts to withhold equitable forms of relief predates the enactment of the statutes defining federal jurisdiction, and the Supreme Court has therefore interpreted the jurisdictional statutes as preserving this traditional discretion in the federal courts. See id. The court has formulated various "abstention" doctrines, which are not "rigid pigeonholes into which federal courts must try to fit cases," id. (internal quotations omitted), but rather classes of cases in which federal courts may properly exercise their traditional discretion to withhold equitable or quasi-equitable forms of relief.

In Younger, the Supreme Court held that federal courts may not enjoin pending state court criminal proceedings except in very unusual situations. The Younger doctrine has since been expanded to prohibit federal courts from interfering in certain pending state civil cases, see Huffman v. Pursue, Ltd. 420 U.S. 592, 603-07 (1975), as well as pending state administrative proceedings which are judicial (as opposed to legislative) in nature, see Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 (1986); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431-32 (1982).

There are essentially three issues that must be addressed in determining whether to invoke the Younger abstention doctrine: (1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. See Middlesex , 457 U.S. at 432. If all three questions are answered affirmatively, a federal court should abstain unless it detects "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate." Id. at 435.

We review the district court's decision to abstain under Younger for abuse of discretion. Fuller v. Ulland, 76 F.3d 957, 959 (8th Cir. 1996). Central to our review

is the question of whether the district court properly applied the three Middlesex criteria. We first examine whether the initial state action constituted an "ongoing state judicial proceeding." Middlesex, 457 U.S. at 432; see also NOPSI, 491 U.S. at 368 ("[I]t has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."). The Supreme Court has described the distinction between judicial proceedings and legislative proceedings as follows:

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

491 U.S. at 370-71 (quoting Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226 (1908) (Holmes, J.)).

The promulgation of zoning ordinances is clearly a legislative rather than judicial function. See Horizon Concepts, Inc. v. City of Balch Springs, 789 F.2d 1165, 1167 (5th Cir. 1986). Similarly, the Supreme Court of Arkansas has held that "the amendment to a comprehensive zoning ordinance or a rezoning of a certain area . . . becomes a part of the existing comprehensive ordinance and, a fortiorari, is a legislative act," Wenderoth v. City of Fort Smith, 472 S.W.2d 74, 76 (Ark. 1971), and we agree. On the other hand, where an appeal to an Arkansas circuit court is from an action *applying* zoning regulations rather than from an action enacting or amending zoning regulations, Arkansas courts correctly consider the action quasi-judicial in nature. City of Jonesboro v. Vuncannon, 837 S.W.2d 286, 288 (Ark. 1992).

Our review of the facts leads us to conclude that the Planning Commission's denial of Regina's business license application is more accurately characterized as judicial rather than legislative. Clearly, the Commission did not rezone any land or create any new zoning classifications—in fact, the Planning Commission lacks the power to do either of these things, as only the governing body of the City can exercise legislative authority. See Ark. Code Ann. § 14-56-422. Instead, every aspect of the Commission's decision approximated judicial rather than legislative behavior. The action arose when Regina's, a private party, applied for a business license to have exotic dancing at 7900 Highway 71. In deciding to deny the application, the Planning Commission staff first looked at existing legal authorities and determined that under existing law, exotic dancing was not a listed use. In so doing, the staff necessarily interpreted the definition of various listed uses such as "nightclub" and determined that exotic dancing did not fall within any of them. Director of Planning Harding then examined the various zoning classifications and determined that the use sought by Regina's fit most properly into the existing classification "Commercial-5-SPL-D." Harding explained that he based his decision on "anticipated traffic and/or pedestrian movements associated with [the proposed use] and other characteristics relative to the impact to surrounding property." (Jt. App. at 319.) Because the land at 7900 Highway 71 was not zoned for SPL-D uses, Director Harding denied Regina's application. The full Planning Commission then considered "the nature of the proposed use and its compatibility with uses permitted in the zones for which the use [was] proposed," Fort Smith Mun. Code § 27-97(4), and unanimously affirmed Harding's decision denying Regina's application. In short, the Commission's action was much more akin to the business of courts than the business of legislatures, and accordingly, we conclude that the initial proceeding from which the state court appeal was taken was itself judicial in nature.

In addition to being judicial in nature, Younger requires that the state proceeding must be ongoing at the time the district court enters its order regarding abstention. See Wiener v. County of San Diego, 23 F.3d 263, 266 (9th Cir. 1994) (in considering

whether a state proceeding is ongoing, federal court should look at "the status of the state court proceeding at the time of the district court's decision rather than on its *current* status on appeal").  It is undisputed that the state action was ongoing at that time. [4] Accordingly, we find that the first of the Middlesex criteria is satisfied, i.e., that the state proceeding is both judicial and ongoing.

The other two Middlesex criteria are clearly satisfied.  Regarding the second of the Middlesex criteria, it is well-established that for abstention purposes, the enforcement and application of zoning ordinances and land use regulations is an important state and local interest.  See Huffman, 420 U.S. at 595-605, (civil enforcement of nuisance law); Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d 401, 409 (9th Cir. 1996) ("land use planning is a sensitive area of social policy" which federal courts typically ought not enter), cert. denied, 118 S. Ct. 1386 (1998); Pomponio v. Fauquier County Bd. of Supervisors, 21 F.3d 1319, 1327 (4th Cir. 1994) (en banc) ("[S]tate and local zoning and land use law is particularly the province of the State and . . . federal courts should be wary of intervening in that area in the ordinary case . . . [because] [w]e can conceive of few matters of public concern more substantial than zoning and land use laws"); Izzo v. Borough of River Edge, 843 F.2d 765, 769 (3d Cir.1988) ("We share . . . the federal judiciary's traditional respect for local administration and control of land use regulation.  Federal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to municipalities . . . . Land use policy customarily has been considered . . . an area in which the tenets of federalism are particularly strong.").

---

[4]In fact, Regina's state proceedings are still "ongoing."  Although Regina's state action was dismissed by the state trial court on November 20, 1997, Regina's has appealed the dismissal.  Because the state proceedings have not concluded, Regina's argument that the district court erred in "continuing to abstain" under Younger once the state proceedings had concluded (see Appellant's Br. at 30-40) is premature.

Regarding the third Middlesex criterion, Regina's clearly could have raised, and in fact initially did raise, its federal constitutional claims before the state court. We need not reach the question of whether the planning commission was competent to address Regina's constitutional arguments, because it is sufficient for Younger purposes "that constitutional claims may be raised in state-court judicial review of the administrative proceeding." Ohio Civil Rights Comm'n, 477 U.S. at 629.[5] Regina's does not contest that it had the power to bring a separate count alleging federal civil rights violations in its state court complaint. In fact, Regina's original complaint did allege such federal violations, but Regina's subsequently amended the complaint to remove all references to its federal claims. This move makes clear that Regina's made a conscious decision not to bring a section 1983 claim in its state action. As the Supreme Court has noted, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987). Regina's must at least attempt to raise its federal claims in state court before we will consider its argument that it is impossible to do so.

Thus, we hold that the district court correctly determined that all three of the Middlesex criteria are present. Additionally, we find that none of the exceptions to the Younger doctrine apply. In particular, Regina's has failed to convince us that the zoning ordinance is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Huffman, 420 U.S. at 611; see Middlesex , 457 U.S. at 435. Accordingly, we find no abuse of discretion in the district

---

[5]Although Regina's argues that the Planning Commission lacked the competence to consider Regina's federal Constitutional arguments, it is undisputed that Regina's made such arguments to the Planning Commission. (See Jt. App. at 385 ("First Amendment . . . gives [Regina's] the same right to operate within our city limits.").)

court's decision to abstain under <u>Younger</u>.  <u>See</u> <u>Fuller</u>, 76 F.3d at 959 (standard of review).

### III.

Having decided that abstention under <u>Younger</u> was appropriate, we must next address Regina's argument that the district court erred in dismissing the action with prejudice.  In general, the <u>Younger</u> abstention doctrine "directs federal courts to abstain from granting <u>injunctive</u> or <u>declaratory relief</u> that would interfere with pending judicial proceedings."  <u>Martinez v. Newport Beach City</u>, 125 F.3d 777, 781 (9th Cir. 1997) (citing <u>Younger</u>, 401 U.S. at 40-41) (emphasis added).  In such cases, "<u>Younger v. Harris</u> contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts."  <u>Gibson v. Berryhill</u>, 411 U.S. 564, 577 (1973) (a § 1983 case involving only injunctive relief, and not damages); <u>see</u> <u>also</u> <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 731 (1996) (noting that under Supreme Court precedents, "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary").

In cases where damages are sought in the federal suit, the Supreme Court instructs that traditional abstention principles generally require a stay as the appropriate mode of abstention:

> In those cases in which we have applied traditional abstention principles to damages actions, we have only permitted a federal court to withhold action until the state proceedings have concluded, that is, we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether.

-11-

Quackenbush, 517 U.S. at 730 (internal quotations and citations omitted). The Court in Quackenbush noted one exception, and thus preserved the limited holding of Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100 (1981), where the Court allowed a dismissal on abstention principles of a section 1983 damages case, because the award of damages would have first required a declaration that a state tax scheme was unconstitutional. Id. at 719; see also, Amerson v. State of Iowa, 94 F.3d 510, 513 (8th Cir. 1996) (affirming the dismissal of a § 1983 claim for damages where any award of damages first required a discretionary declaration that a state court termination of parental rights was unconstitutional), cert. denied, 117 S. Ct. 696 (1997). Our court has recently written that when abstention under Younger is merited, "'so long as a possibility of return to federal court remains, a stay rather than a dismissal is the preferred mode of abstention.'" Fuller, 76 F.3d at 960-61 (quoting International Ass'n of Entrepreneurs v. Angoff, 58 F.3d 1266, 1271 (8th Cir. 1995), cert. denied, 516 U.S. 1072 (1996)). In Fuller, we affirmed the district court's decision to abstain under Younger, but we vacated its decision to do so *via* dismissal, and we remanded the case to the district court for entry of a stay. See 76 F.3d at 960-61.

In this section 1983 case, Regina's requested monetary damages in addition to injunctive relief. The present case does not fall within the very limited holding of Fair Assessment because an award of damages would not require us first to declare unconstitutional a state statute or to overturn a state court judgment on a matter of state policy. See Amerson, 94 F.3d at 513. Therefore, dismissal of the action is not permitted, and precedents require that we stay this action for damages. We vacate the dismissal and remand for the entry of a stay pending the final resolution of the state litigation.

IV.

Accordingly, we vacate the district court's dismissal and remand to the district court for the entry of a stay. Once the proceedings related to Regina's appeal from the

-12-

Planning Commission's decision have reached their final denouement, the district court should lift its stay and proceed with the consideration of Regina's federal claims on the merits.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.