**EBIZA, INC., and Roberto Orozco, Plaintiffs,**

v.

**CITY OF DAVENPORT, Defendant.**

No. 3:06–cv–00039–JEG.

United States District Court, S.D. Iowa, Davenport Division.

June 1, 2006.

Steven J. Havercamp, Stanley, Lande & Hunter, Davenport, IA, for Plaintiffs.

Brian E. Heyer, City of Davenport, Davenport, IA, for Defendant.

## ORDER

GRITZNER, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction (Clerk's No. 2) and Defendant's Motion to Dismiss (Clerk's No. 5). Plaintiffs are represented by Steven J. Havercamp, and Defendant is represented by Brian E. Heyer. Following a hearing on Tuesday, May 15, 2006, both motions are fully submitted and ready for disposition.

## FACTS

Plaintiff Ebiza, Inc., is an Iowa corporation. Plaintiff Roberto Orozco, an Hispanic male residing in Bettendorf, Iowa, owns half of Ebiza's issued stock, and is its president. Defendant City of Davenport ("the City") is an Iowa municipal corporation located in Scott County, Iowa. This litigation focuses on the maze of licensing ordinances the City has required Plaintiffs to navigate in their journey to open a functional, profitable business in the City.

The Village of East Davenport ("the Village") is a colloquial name for a group of around eighty businesses found in eastern Davenport. According to Plaintiffs, the Village is known for, among other things, food and drink establishments. Plaintiffs allege businesses possessing class "C" liquor control licenses,[1] wine shops, and restaurants[2] serving or selling alcohol are

---

1. A class "C" liquor control license authorize[s] the holder to purchase alcoholic liquors from class "E" liquor control licensees only, wine from class "A" wine permittees or class "B" wine permittees who also hold class "E" liquor control licenses only, and native wines from native wine manufacturers, and to sell liquors, wine, and beer to patrons by the individual drink for consumption on the premises only. However, beer may also be sold for consumption off the premises.

Iowa Code § 123.30(3)(c) (2005); *see also* Davenport, Iowa, Municipal Code § 5.10.060(C) (2006) (same).

2. Davenport's Municipal Code defines a restaurant as "any retail establishment, the principal business of which consists of the sale of food products for consumption on the premises." Davenport, Iowa, Municipal Code § 5.10.105(B). To be a "restaurant", a business is required to reap at least two-thirds of its sales volume through food sales. *Id.* If the business holds a liquor license, it is "presumed that the sale of alcoholic beverages and beer ... constitutes more than thirty-three and one-third percent of the volume of all sales." *Id.*

scattered about the Village.

The facility providing the focus of this litigation is known as The Village Hall ("the Hall"). Plaintiffs allege the Hall is centrally located amongst the Village bars and restaurants.[3] The Hall has periodically operated as a bar, dance hall, place of assembly, and reception hall since 1921, but no liquor license has been issued to businesses operating in the facility since 1998.

On August 25, 2005, Orozco leased the Hall for three years intending to operate it as a bar where patrons could also dance. Orozco claims he performed costly upgrades to the facility. In order to sell alcoholic beverages at his business, Orozco was required to have a liquor control license, see Iowa Code § 123.2, so on September 19, 2005, he filed a class "C" liquor license application with the City, see id. § 123.32(1) (requiring applications for class "C" liquor licenses to "be filed with the appropriate city council if the premises for which the license ... is sought are located within the corporate limits of a city"). His application was initially approved by the Zoning Division, the Police Department, and the Fire Department. But see Davenport, Iowa, Municipal Code § 5.10.100 (requiring approval only by the chief of police and the fire chief). Orozco then learned that as a result of a recently enacted ordinance,[4] he required a special

---

3. A map submitted by the Plaintiffs shows, in fact, the Hall is on the edge of the Village. See Compl. Ex. 1, at 1, 3.

4. Davenport's Municipal Code states, in relevant part, as follows,
    (a) The operation of a business holding a liquor license ... is subject to approval by the Zoning Board of Adjustment unless said business is operated as either:

    .    .    .    .    .

    (2) a restaurant, at least half of whose gross income is derived from the sale of prepared food and food-related services.
    . . .
    (c) The board shall grant approval to a business holding a liquor license ... only where the business, when operated in conformance with such reasonable conditions as may be imposed by the board, satisfies the following criteria:
    (1) The proposed location, design, construction and operation of the particular use adequately safeguards the health, safety and general welfare of persons residing in the adjoining or surrounding residential area.
    (2) The business is sufficiently separated from the adjoining residential area by distance, landscaping, walls or structures to prevent any noise, vibration or light generated by the business from having a significant detrimental impact upon the adjoining residential uses.
    (3) The business will not unduly increase congestion on the streets in the adjoining residential area.

    (4) The operation of the business will not constitute a nuisance.
    (d) Any special use permit so granted by the board shall be subject to the following general conditions, together with any additional special conditions required by the board as appropriate;
    (1) Any parking area provided for the use of customers of the business shall be illuminated at an intensity of at least one footcandle of light on the parking surface. Parking lot lighting shall be limited to downcast luminaries. Parking lot lighting shall be directed away from nearby residential properties and city streets;
    (2) the business shall comply with Chapter 8.19 of the City of Davenport Municipal Code pertaining to noise control.
    (3) Attractive litter and trash receptacles shall be located at convenient locations inside and outside the premises, and the operators of such business shall remove all trash and debris from the premises and adjoining public areas on a daily basis.
    . . . .
    Davenport, Iowa, Municipal Code § 17.48.020(B)(3). Although this ordinance applies only to businesses "holding a liquor license," id. (emphasis added), the City's "established procedures" require a special use permit as a prerequisite to. obtaining a liquor license, see Compl. Ex. 7a, at 3, 4 (rejecting comments from a ZBA meeting attendee who suggested the ZBA lacked standing "to hear the case if the [applicant] is not holding a liquor license").

use permit from the City's Zoning Board of Adjustment (ZBA) before the City Council would consider his liquor license application. Orozco did not challenge the ZBA's authority to grant such a permit, *see* Iowa Code § 414.12(1)-(3) (listing the enumerated powers of a board of adjustment); *see also id.* § 123.37 ("Unless specifically provided, a local authority shall not require the obtaining of a special license or permit for the sale of alcoholic beverages ...."), but instead filed an application. A ZBA Staff Report recommended approval with a number of conditions and restrictions primarily related to parking, litter, and noise control.

At its October 5, 2005, meeting, the ZBA considered Orozco's special use permit application. Minutes of the meeting indicate a number of individuals objected to the issuance of the permit. Many complaints centered on a perceived shortage of parking spaces and anticipated increases in traffic congestion and noise the business would cause. The ZBA elected to deny Orozco's application. A "Finding of Fact" explained why:

> The board concludes that while the parking requirement of the ordinance may be met the practical affect [sic] is an increase in congestion on the surrounding streets.

> The board concludes that the suitability of the business with the size of the building would not be in keeping with the surrounding commercial uses.

> The board concludes that given the size of the building and potential crowd generation, that trash generation is a concern and that location of trash receptacles (read dumpster [sic]) could only occur within the front yard of the property.

Compl. Ex. 8, at 2–3. Orozco asked the ZBA to reconsider. Minutes of the ZBA's October 19 meeting indicate evidence was presented challenging the characterization of the property made at the previous meeting, but Orozco's application was again denied.

On November 4, 2005, Orozco and Ebiza filed the first of two appeals[5] in the Iowa District Court in and for Scott County. Their first action constituted an appeal of the ZBA's refusal to issue a special use permit. *See* Iowa Code § 414.15 (permitting a person "aggrieved by any decision of the board of adjustment ... [to] present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality"). Plaintiffs sought a declaration that the ZBA's actions were arbitrary and capricious and an order that a special use permit issue.

Meanwhile, Orozco's business changed course. On November 16, 2005, Orozco filed a business license application indicating a desire to operate the Hall as a dance facility for patrons under age nineteen. *See* Davenport, Iowa, Municipal Code § 5.42.020 (requiring business licenses for dance halls). The City's Municipal Code provides that such a business license is to automatically issue upon the payment of any required fees or charges and the presentment of a receipt for such fees to the city clerk. *Id.* § 5.02.070(A). However, the mayor may act to alter the automatic nature of this procedure. *See id.* § 5.02.090(B).

In a letter dated December 1, 2005, Orozco was informed that Mayor Charles W. Brooke had directed the City's revenue manager not to issue the business license pursuant to the mayor's authority under Davenport Municipal Code § 5.02.090(B)."[6] According to Mayor

---

**5.** Collectively, the actions filed in state court are referred to as the "state court actions." Both state court actions are ongoing as of the date of this Order.

**6.** Mayor Brooke's letter indicates reliance on

Brooke, there were "sufficient reasons to believe that the business [was] likely to lead to violation of ordinances related to the breach of the peace, and [Orozco] made false or misleading representations in connection with the license application." Mayor Brooke did not explain why the business was likely to lead to a breach of the peace; nor did he indicate which representations were false or misleading.

A party denied a business license may appeal. *See id.* § 5.02.100. Plaintiffs claim appeals are heard by the mayor. *But see Talarico v. City of Davenport,* 215 Iowa 186, 244 N.W. 750, 752 (1932) (in a challenge to the predecessor of § 5.02.100, concluding that "[a] fair construction of the ordinances ... indicates that [an appeal] was to be before the license committee [7] or the council, according to which, under the ordinances and the charter of the city, has the final power in granting or refusing the license"); *see also* Davenport, Iowa, Municipal Code § 5.08.180(B) (requiring similar appeals on the blockage of certain auctioneer licenses to be heard by the Public Safety Committee of the City Council). Orozco claims Mayor Brooke heard such an appeal on December 20, 2005, and again denied the business license application, this time failing to issue a written statement detailing the rationale for the denial.

Plaintiffs initiated the second of their state court actions on January 20, 2006, wherein they challenged the mayor's conduct in blocking the issuance of their business license. In that action, Plaintiffs re-quested a declaration that the mayor's conduct was arbitrary and capricious or otherwise illegal and violated due process. Plaintiffs also demanded an order that their business license application be granted.

Again altering his business plan, Orozco abandoned his idea for a dance hall and instead decided to open a business named "Ebiza Restaurant and Bar" at the Hall as a joint venture with a company owned by established restauranteurs. On January 18, 2006, Ebiza filed a class "C" liquor license application with the City for Ebiza Restaurant and Bar. Orozco listed himself as the owner of the business. Plaintiffs claim the City refused to process this application because the joint venturers were not listed as owners. Ebiza then filed yet another class "C" liquor license application on February 27, 2006, listing the joint venturers as co-owners. This application was to be considered at a March 15 City Council meeting.

On March 7, 2006, a Davenport business owner filed an appeal with the ZBA, arguing the business Ebiza proposed required a special use permit. Plaintiffs contend Ebiza Restaurant and Bar required no such permit because at least half of its gross income was to be derived from the sale of prepared food and food-related services. *See* Davenport, Iowa, Municipal Code § 17.48. 020(B)(3)(a)(2) (exempting "restaurant(s), at least half of whose gross income is derived from the sale of pre-

---

section 5.02.09(B). *See* Compl. Ex. 13. There is no such section. Section 5.02.090(B), however, provides, in relevant part,

> The mayor may at any time forbid the issuance of a license ... if, in his judgment, any business ... is or will be detrimental to public health or morals, or liable to lead to the violation of any ordinance or law, or provoke a breach of the peace, or, if any such licensee or any of his agents makes any false or misleading statements or repre-sentations in the furtherance of the business conducted under said license or violates any ordinance or law in the conduct of the business for which such license is issued.

Davenport, Iowa, Municipal Code § 5.02.090(B).

7. A license is required from a license committee for activities and performances not relevant here. *See* Davenport, Iowa, Municipal Code §§ 5.040.030–.050.

pared food and food-related services"). Nevertheless, according to the City, this appeal "stay[ed] all proceedings in further-ance of the action appealed from," Iowa Code § 414.11, which, in the City's opinion, included Ebiza's liquor license application pending before the City Council. The ZBA heard the appeal of the local business owner on March 15, and it was denied. However, as a result of the appeal-initiated stay, on March 9, the Public Safety Com-mittee[8] of the City Council tabled Ebiza's liquor license application for four weeks.

Minutes of the March 15, 2006, City Council meeting indicate the Council did not consider Ebiza's liquor license applica-tion. Instead, the Council passed a resolu-tion "establish[ing] a 120 day moratorium on the issuance of any and all new busi-nesses licenses" in the Village. The lan-guage of the resolution indicates the City "desire[d] to investigate and enact zoning regulations to further protect and preserve the unique character of" the Village. As a resolution, the moratorium required the mayor's signature to be effective. *See* Iowa Code § 380.6(1)(b) ("A resolution signed by the mayor becomes effective immediately upon signing."). The City's new mayor, Ed Windborn, signed the mor-atorium resolution on March 24, 2006.

Plaintiffs allege that between the pas-sage and effective date of the moratorium, the City permitted businesses located in the Village without licenses to obtain them. Unlike Ebiza's proposed business, the rec-ord suggests each of those businesses was already in operation when the moratorium became effective.[9]

On April 3, the City Council approved and renewed a number of class "C" liquor licenses. One renewal was for a business in the Village. Of course, the import of the City Council's *renewal* of a *liquor* li-cense is limited because the moratorium applies to new *business* licenses. This rec-ord does not reflect how many, if any, business licenses were granted to busi-nesses operating or wishing to open in the Village after the moratorium became effec-tive.

Following the four-week tabling period, Ebiza's liquor license application was placed on the Public Safety Committee's April 13 agenda. Before the meeting, a city attorney advised the committee that the City Council could approve Ebiza's application, but the license would not issue until the end of the moratorium. In ap-parent reliance upon this statement, the Public Safety Committee again tabled Ebi-za's application. On April 27, the Commit-tee tabled Ebiza's application "until the moratorium expires." Ebiza's application has not subsequently appeared on the agenda of the Public Safety Committee or the City Council.

Summarizing, Plaintiffs have once been denied a special use permit; have once been denied a business license; have the fate of one liquor license application (that filed on September 19, 2005) hinged on the outcome of their state court actions; have

---

**8.** Davenport's Municipal Code provides that hearings "on suspension of ... liquor licenses shall be held before the mayor and the public safety committee of the city council," but does not require approval by that committee before a license issues. *See* Davenport, Iowa, Mu-nicipal Code § 5.10.240.

**9.** *E.g.,* Hr'g Ex. 19, at 1–3 (transfer of owner-ship of existing business), 4–7 (business in operation since 2004), 8–10 (application date of March 17, 2006, for an "existing use" business), 11–13 (business in operation since 2004), 14–17 (business in operation since Jan-uary 2006), 18–20 (business in operation since 2000), 21–23 (application date of Octo-ber 4, 2005, with a business opening date in "November"), 24–26 (business opening date of March 1, 2006).

apparently abandoned one liquor license application (that filed on January 18, 2006); and have had one liquor license application tabled (that filed on February 27, 2006).

Plaintiffs filed a four-count complaint in this court on April 12, 2006.[10] In Count 1, Plaintiffs claim the City violated procedural due process principles by passing a moratorium targeting their business, tabling their liquor license applications, and denying their special use permit and business license applications. Count 2 claims the occurrence of equal protection violations. First, Plaintiffs claim Ebiza has been treated "differently than other similarly situated businesses applying for licenses" because the City has "den[ied] it the ability to have its application decided." Second, Orozco alleges he was treated differently than other applicants because he is Hispanic. Count 3 claims the City's ordinances and actions have effected a regula-

tory taking.[11] Count 4 alleges the license applications discussed above were denied because Orozco is Hispanic, resulting in a purported violation of 42 U.S.C. § 1983.

Pending are Plaintiffs' Motion for Preliminary Injunction and the City's Motion to Dismiss. Plaintiffs seek to enjoin enforcement of the moratorium and have requested a court order requiring the City Council to consider Ebiza's liquor license application and issue such a license. *But see* Iowa Code §§ 123.20(5), .32(5)(b) (liquor control licenses may only be issued by administrator of the Iowa Alcoholic Beverages Division). The City argues the Court should abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, because of the existence of the state court actions, wherein Plaintiffs allegedly advance claims virtually identical to those here.

---

**10.** Because the complaint includes an alleged violation of a federal statute, subject matter jurisdiction exists under 28 U.S.C. § 1331 (2000). And because the statute purportedly violated is 42 U.S.C. § 1983, the Anti–Injunction Act, 28 U.S.C. § 2283, does not pose an independent barrier to enjoining any ongoing state judicial proceedings, *see Mitchum v. Foster*, 407 U.S. 225, 242–43, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), but *Younger* abstention may, *see id.* at 243, 92 S.Ct. 2151 ("[W]e do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.").

**11.** As the City points out, any taking claim pressed by Plaintiffs must be ripe in two different ways. First, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *accord San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, ——, 125 S.Ct. 2491, 2506, 162

L.Ed.2d 315 (2005); *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733–34, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997); *Kottschade v. City of Rochester*, 319 F.3d 1038, 1039–40 (8th Cir.2003). Here, Plaintiffs' liquor license application is still under consideration.

Second, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County*, 473 U.S. at 195, 105 S.Ct. 3108; *accord Suitum*, 520 U.S. at 734, 117 S.Ct. 1659; *Kottschade*, 319 F.3d at 1040. Failing to follow that procedure or have a state court rule that an inverse condemnation procedure cannot be brought renders a taking claim unripe. *Koscielski v. City of Minneapolis*, 435 F.3d 898, 903–04 (8th Cir.2006); *Metzger v. Village of Cedar Creek*, 370 F.3d 822, 823–24 (8th Cir.2005). Plaintiffs have submitted no evidence suggesting they have sought (or been denied) just compensation through available state channels. Thus, Plaintiffs are faced with the prospect that their taking claim is unripe.

## DISCUSSION

### I. Introduction.

*Younger* abstention is a type of "threshold" question which must precede consideration of even jurisdictional issues. *Cf. Tenet v. Doe*, 544 U.S. 1, 6 n. 4, 125 S.Ct. 1230, 161 L.Ed.2d 82 (2005) (dicta) ("[A]pplication of the *Totten* rule of dismissal, like the abstention doctrine of *Younger* ... represents the sort of 'threshold question' we have recognized may be resolved before addressing jurisdiction" (citation omitted)); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (listing *Younger* abstention as one of several "threshold grounds for denying audience to a case on the merits"); *Steel Co. v. Citizens for A Better Env't*, 523 U.S. 83, 100 n. 3, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (approving the principle that *Younger* abstention may analytically precede whether a case or controversy exists (citing *Ellis v. Dyson*, 421 U.S. 426, 436, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975))); *Crawford v. F. Hoffman–La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir.2001) (including *Younger* abstention in a catalog of situations where a court may dismiss on "threshold grounds"). The City's Motion to Dismiss must be considered first.

### II. The City's Motion to Dismiss.

The City argues that because Plaintiffs have initiated proceedings in state court challenging the denial of their business license and special use permit, the Court should abstain from exercising jurisdiction in deference to those proceedings under the *Younger* line of cases.[12] Therefore, the City argues, abstention is required because the state court actions "involve allegations almost, if not exactly like the averments contained in their federal lawsuit." Resisting, the Plaintiffs argue *Younger* abstention is improper because the conduct challenged in the state court actions is not the same as that animating their federal lawsuit. They point out that the state court actions challenge neither the moratorium nor the City's treatment of their liquor license applications. Consequently, the Plaintiffs conclude, even if there is some overlap, there is no ongoing proceeding with which their federal action would interfere.

### A. Applicable Legal Principles.

The Supreme Court has recently emphasized the need for "[c]ooperation and comity, not competition and conflict" in the "complementary systems for administering justice in our Nation" comprised of the federal and state court systems. *Ruhrgas*, 526 U.S. at 586, 119 S.Ct. 1563. Occasion-

---

12. Neither party has addressed the issue of whether abstention would be appropriate under the doctrine evolving from *Colorado River Conservation District v. United States*, where the Supreme Court announced the rule that in some "extraordinary" cases, a federal court could dismiss a federal complaint in favor of a concurrent state court action. *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817–20, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, the Court cautioned that "[o]nly the clearest of justifications will warrant dismissal," *id.* at 819, 96 S.Ct. 1236, and set out the general rule that "as between state and federal courts, ... 'the

pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction,'" *id.* at 817, 96 S.Ct. 1236 (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). Because the record is devoid of argument on the issue and because the principles underlying *Colorado River* (judicial economy) are different than those addressed by *Younger* (comity and federalism), *see Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 298 n. 4 (8th Cir.1995), the Court declines to consider whether *Colorado River* abstention is appropriate in this case.

ally, "[c]omity or abstention doctrines may ... permit or require [a] federal court to stay or dismiss [a] federal action in favor of the state-court litigation." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Younger*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). In those rare cases, a federal court may refuse to grant certain types of relief, despite its obligation to exercise jurisdiction where it exists. *Compare Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution."), *with New Orleans Pub. Serv., Inc. v. City of New Orleans*, 491 U.S. 350, 358–59, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (moderating the view in *Cohens* by recognizing that federal courts do have "discretion in determining whether to grant certain types of relief"). In those cases, "withholding ... authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do,' " *New Orleans Pub. Serv.*, 491 U.S. at 359, 109 S.Ct. 2506 (quoting *Younger*, 401 U.S. at 45, 91 S.Ct. 746), and the "virtually unflagging" duty of federal courts to adjudicate claims within their jurisdiction bows to any ongoing state proceedings, *Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988).

At its most basic level, the *Younger* line of cases represents an application of elementary equity principles [13] warped by molding these more plastic rules around less flexible federalism and comity principles. In *Younger*, for example, a state court defendant sought to enjoin his prosecution in federal court. *Younger*, 401 U.S. at 38–39, 91 S.Ct. 746. Disapproving of this practice, the Supreme Court explained an injunction would be inappropriate because "of the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy of law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43–44, 91 S.Ct. 746; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (same); *Trainor v. Hernandez*, 431 U.S. 434, 441, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (same). Two conceptual pillars undergird this conclusion. First, the Court noted the need to "avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Younger*, 401 U.S. at 44, 91 S.Ct. 746. The Court also emphasized "an even more vital consideration":

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.

*Id.*; *see also Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619,

---

**13.** The age-old requirements of an inadequate remedy at law and an impending injury are renamed in abstention parlance, respectively, as a requirement that state proceedings fail to give a federal plaintiff the opportunity to raise federal constitutional claims, and that some truly extraordinary harm be suffered if state proceedings are not enjoined. *Trainor v. Hernandez*, 431 U.S. 434, 440–43 & n. 7, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *see Younger*, 401 U.S. at 43–44, 46, 91 S.Ct. 746.

626–27, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (summarizing this duet of reasons for the *Younger* Court's conclusion); *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir.2004) ("[F]ederal courts should abstain from exercising jurisdiction in cases where equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism."); *Yamaha Motor Corp., U.S.A. v. Riney*, 21 F.3d 793, 797 (8th Cir.1994) (recognizing "a class of cases in which it is typical, as opposed to exceptional, to withhold the authorized equitable relief from a claimant because of undue interference with state proceedings"). In a companion case decided the same day as *Younger*, the Court extended the rule to bar federal courts from issuing declaratory relief that would interfere with ongoing state criminal proceedings. *Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

The rule has continued to evolve. As it has done so, the Court has recognized that comity requires a federal court to stay its hand even if the state proceedings are not criminal. *Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). This shift equipped the *Younger* doctrine with the tools needed to expand its influence beyond prohibiting the enjoining of criminal proceedings, as in *Kowalski v. Tesmer*, 543 U.S. 125, 133, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004), to some noncriminal settings where important state interests are implicated. *See, e.g., Pennzoil*, 481 U.S. at 10–14, 107 S.Ct. 1519 (enforcement of state court judgment in a civil lawsuit); *Dayton Christian Sch.*, 477 U.S. at 628–29, 106 S.Ct. 2718 (investigation of state civil rights commission); *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432–35, 437, 102

S.Ct. 2515, 73 L.Ed.2d 116 (1982) (lawyer disciplinary proceedings before a state ethics committee); *Moore*, 442 U.S. at 423, 99 S.Ct. 2371 (state-initiated child-welfare action); *Trainor*, 431 U.S. at 444, 97 S.Ct. 1911 (civil collection action initiated to recover fraudulently obtained welfare payments); *Juidice v. Vail*, 430 U.S. 327, 335–36, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (judicial contempt proceedings); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–05, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (enforcement of obscenity nuisance regulation).[14] The Court has stopped short, though, of stating that *Younger* applies in every civil case. *See Trainor*, 431 U.S. at 444 n. 8, 97 S.Ct. 1911 (reserving the question of whether *Younger* principles apply to all civil litigation); *Juidice*, 430 U.S. at 336 n. 13, 97 S.Ct. 1211 (same).

The Court has, however, been clear in requiring some pending or imminent proceeding at the state level, or the federalism principles *Younger* is designed to protect are simply not implicated. *Ankenbrandt v. Richards*, 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928–29, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (applying *Younger* where a federal complaint preceded state criminal charges, but such charges resulted from the plaintiff's re-engagement in offending behavior); *Hicks v. Miranda*, 422 U.S. 332, 348–50, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) ("[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger* ... should apply in full force."). Thus, as the Court has crafted the doctrine, the keystone of the analysis

---

**14.** Despite the procedural posture of these cases, it is, of course, unnecessary that the federal plaintiff be the defendant in the state

action. Cf. *Cedar Rapids Tel., L.P. v. Miller*, 280 F.3d 874, 881 (8th Cir.2002).

has broadened from identifying an ongoing state criminal prosecution to identifying an important state interest bound up in ongoing or soon to be ongoing nonfederal proceedings.

■ Fortunately, the circumstances that must exist for *Younger* to apply have been distilled from broadly stated comity and federalism principles to a more usable three-factor test. In the absence of bad faith, harassment, or some other extraordinary circumstance, abstention under *Younger* is appropriate if " '(1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented.' " *Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir.2005) (quoting *Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir.1996)); *accord Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515; *Aaron*, 357 F.3d at 774; *Silverman v. Silverman*, 267 F.3d 788, 792 (8th Cir.2001); *Harmon v. City of Kansas City*, 197 F.3d 321, 325 (8th Cir. 1999); *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 479 (8th Cir.1998); *Riney*, 21 F.3d at 797. The Court must divorce itself from consideration of the ordinances challenged, *e.g., Hicks*, 422 U.S. at 352, 95 S.Ct. 2281 (abstention is required even if a prosecution is brought under a statute believed to be unconstitutional), and avoid "pigeonhol[ing]" this case into what is supposed to be "a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes," *Pennzoil*, 481 U.S at 11 n. 9, 107 S.Ct. 1519.

## B. Analysis.

### 1. Elements of *Younger* Abstention.

### a. Ongoing State Judicial Proceeding.

■ The first inquiry is whether ongoing state judicial proceedings exist which would be disrupted if Plaintiffs' federal action were allowed to continue.

The City points to the state court actions as evidence that the first prong has been satisfied. As noted, one action addresses the City's denial of Plaintiffs' special use permit, and the other challenges the mayor's denial of Plaintiffs' business license application. Plaintiffs argue no ongoing state judicial proceedings exist because the state court actions challenge neither the moratorium nor the treatment of their liquor license applications. Relying on *Redner v. Citrus County*, 919 F.2d 646 (11th Cir.1990), and *Wiener v. County of San Diego*, 23 F.3d 263 (9th Cir.1994), Plaintiffs contend that for *Younger* abstention to apply, the laws or administrative decisions challenged in the state and federal actions must be precisely the same.

In *Redner*, the owner of an adult entertainment facility filed an action in federal court challenging the constitutionality of an ordinance and a successor ordinance requiring adult entertainment facilities to have a license. *Redner*, 919 F.2d at 648 & n. 1. When the federal complaint was filed, the owner was the defendant in state criminal proceedings under the first ordinance but had not been charged for violating the successor ordinance. *Id.* at 648. Although the two ordinances were "extremely similar, ... their terms [were] not identical." *Id.* at 650. The Eleventh Circuit held that as a result of those differences, abstaining from deciding the constitutionality of the successor ordinance was improper because "even if the federal district court had held [the successor ordinance] unconstitutional, the state courts might have still properly held that [the predecessor ordinance] was constitutional." *Id.* The court also noted that the criminal proceedings brought under the first ordinance could still proceed without impacting the successor ordinance. *See id.* at 651.

As a result, there was no ongoing judicial proceeding relating to the successor ordinance. *See id.* The *Wiener* court, relying on *Redner, see Wiener,* 23 F.3d at 266 n. 4 (citing *Redner,* 919 F.2d at 650–51), reached the same conclusion, noting that the ordinance challenged in federal court "was not even adopted until near the end of the state court trial," *id.*

These cases dispose of Plaintiffs' challenge to the denial of their business license. In their Complaint, Plaintiffs allege the mayor denied their business licence application under Davenport Municipal Code sections 5.02.090 and .100 in an "arbitrary and capricious" way. Compl. ¶ 61(D); *see* Compl., at 18 ¶ A. And in one of Plaintiffs' state court actions, they reference the same sections and claim the mayor's denial thereunder was "arbitrary and capricious." The ordinances challenged are identical, and Plaintiffs claim the ordinances were violated in the same way.

These cases also dispose of Plaintiffs' challenge to the ZBA's denial of their special use permit. In their Complaint, Plaintiffs allege the City has "[a]rbitrarily and capriciously den[ied] Orozco a Special ... Use Permit." Compl. ¶ 61(C). In their state court filings, Plaintiffs claim that the denial "was arbitrary and capricious and made based on false assumptions and incorrect fact [sic]." The same conduct forms the basis of both actions.

Each of Plaintiffs' state court actions are pending in state court, so they are unquestionably judicial in nature. As a result, ongoing state judicial proceeding exist with respect to Plaintiffs' challenges to the denial of their business license and special use permit applications.

Analyzing the moratorium and the City's treatment of Plaintiffs' liquor license applications requires a deeper examination of what constitutes a "judicial proceeding" for *Younger* purposes.

The term "judicial proceeding" encompasses more activity than those proceedings occurring before a judge in formal state court proceedings. *See Dayton Christian Sch.,* 477 U.S. at 626–27, 106 S.Ct. 2718 (noting *Younger's* application to "state administrative proceedings in which important state interests have been vindicated"); *Middlesex,* 457 U.S. at 435, 102 S.Ct. 2515 (state ethics committee comprises a judicial proceeding); *Norwood,* 409 F.3d at 903 (proceeding before a state judicial discipline and disability commission is a judicial proceeding). In fact, any proceeding culminating in the denial of a business license application can be judicial, even if the initiation of the proceeding occurs before a municipal commission. *Night Clubs,* 163 F.3d at 479–80. This unobvious conclusion becomes more intuitive when considering the following explanation highlighting the difference between legislative and judicial proceedings:

> "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed to already exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power."

*Id.* at 479 (quoting *New Orleans Pub. Serv.,* 491 U.S. at 370–71, 109 S.Ct. 2506); *see also Yamaha Motor Corp., U.S.A. v. Stroud,* 179 F.3d 598, 602 (8th Cir.1999) ("Administrative proceedings which declare and enforce liabilities can be state judicial proceedings for purposes of *Younger* abstention.").

Here, the City has used the moratorium to defer consideration of Plaintiff's liquor license application. While this Court does not now decide whether the moratorium's terms permit such a practice, the nature of

Plaintiffs' current challenge is that the moratorium has been applied in a way to block further consideration of their application, not the legislative process culminating in promulgation of the moratorium. Applying the moratorium in a manner with textual support vel non is a function judicial in nature because it involves the application of an existing rule. In this way, the City's conduct is dissimilar to a rate-making body which sets a policy for use in the future, *see New Orleans Pub. Serv.*, 491 U.S. at 369–71, 109 S.Ct. 2506, or an administrative proceeding commenced to obtain information about Plaintiffs' business practices, *see Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 882 (8th Cir. 2002). The City's consideration of Plaintiffs' liquor license application therefore constitutes a procedure judicial in nature. And Plaintiffs cannot avoid the *Younger* bar generated by the City's application of the moratorium by attacking the moratorium or the procedures used to enact it. *See Dayton Christian Sch.*, 477 U.S. at 628, 106 S.Ct. 2718 ("[W]e have repeatedly rejected the argument that a constitutional attack on state procedures themselves 'automatically vitiates the adequacy of those procedures for purposes of the *Younger– Huffman* line of cases.'" (quoting *Moore*, 442 U.S. at 427 n. 10, 99 S.Ct. 2371)).

The Court therefore finds ongoing judicial proceedings exist with respect to each of the types of conduct challenged in Plaintiffs' Complaint.

### b. Implication of Important State Rights.

■ The second prong depends on the implication of important state interests in the ongoing state judicial proceedings.

In our circuit, "it is well-established that for abstention purposes, the enforcement and application of zoning ordinances and land use regulations is an important state and local interest." *Night Clubs*, 163 F.3d at 480 (8th Cir.1998) (collecting cases); *accord Aaron*, 357 F.3d at 778; *see also Outdoor Graphics, Inc. v. City of Burlington*, 103 F.3d 690, 695 (8th Cir.1996) (noting "that reasonable zoning ordinances are generally a lawful exercise of a state's police power to regulate in the interests of public health, comfort, safety, convenience and maintenance of property values" (collecting cases)). Plaintiffs' state court actions implicate important state interests, as both involve the enforcement of land use and business license ordinances. *See Night Clubs*, 163 F.3d at 480 (concluding that important state interests were implicated in a challenge to the denial of a business license). The same interest is implicated with Plaintiffs' challenge to the moratorium, which restricts the grant of business licenses.

The City's treatment of Plaintiffs' liquor license applications also implicates important state interests. *See* Iowa Code § 123.1 (stating that the Iowa Alcoholic Beverages Act, which requires the class "C" liquor permit sought by Plaintiffs is "an exercise of the police power of the state, for the protection of the welfare, health, peace, morals, and safety of the people of the state"); Davenport, Iowa, Municipal Code § 5.10.010 (explaining that the purpose of Davenport's liquor license ordinance scheme is to "provide administration of licenses and permits and for local regulations and procedures for the conduct of the sale and consumption of beer and liquor, for the protection of the safety, morals and general welfare of this community"); *see also* Iowa Code § 123.1 (declaring that "traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as provided in this chapter"). The Supreme Court has recognized "the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amend-

ment," *Doran,* 422 U.S. at 932, 95 S.Ct. 2561, and "ample power" to regulate where alcoholic beverages are sold even apart from that Amendment, so long a State's methods of regulation do not run afoul of other constitutional obligations, *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 515–16, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (overruling *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972)). Licensing where alcoholic beverages may be sold inherently implicates uniquely state-oriented concerns.

Requiring the immediate issuance of a liquor license would also short circuit the multi-tiered appeals process applicable to liquor license denials (and approvals) set forth in the Iowa Code. *See* Iowa Code § 123.32(5)(b) (containing steps the Iowa Alcoholic Beverages Division must undertake upon receiving an application approved by a local authority); § 123.32(6) (denials may be appealed to the administrator of the Iowa Alcoholic Beverages Division); § 123.32(7) (a city or an unsuccessful applicant may appeal a decision of the administrator to the district court in the county where the premises to be licensed is located). The State of Iowa has an interest in enforcing its statutory appeals scheme applicable to such procedures.[15]

The Court finds the conduct challenged by Plaintiffs clearly implicates important state interests. Satisfaction of the second *Younger* prong is therefore compelled by this record.

#### c. Adequacy of State Proceedings.

■ The outcome of the third *Younger* prong depends on Plaintiffs' ability to raise any constitutional claims in the ongoing state judicial proceedings. Importantly, the key is not whether the Plaintiffs have sought resolution of their federal claims in the state proceedings, but whether they *could* seek resolution of those questions by a competent tribunal in an impartial way. *Moore,* 442 U.S. at 425, 99 S.Ct. 2371; *Juidice,* 430 U.S. at 337, 97 S.Ct. 1211; *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Neal v. Wilson,* 112 F.3d 351, 357 (8th Cir.1997). The federal plaintiff bears the burden of showing that the pursuit of federal claims would be impermissible in state proceedings. *Pennzoil,* 481 U.S. at 14, 107 S.Ct. 1519; *Middlesex,* 457 U.S. at 423, 102 S.Ct. 2515; *Younger,* 401 U.S. at 45, 91 S.Ct. 746. Where "a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil,* 481 U.S. at 15, 107 S.Ct. 1519. If the time where the federal plaintiff could have raised such claims has passed, it is not the federal court's duty to revive them. *See Juidice,* 430 U.S. at 337, 97 S.Ct. 1211 (noting that a litigant's "failure to avail themselves of such opportunities does not mean that the state procedures were inadequate").

The analysis begins with the denial of Plaintiffs' special use permit and business license applications. Each denial is challenged in Plaintiffs' state court actions, and each of those actions is now stylized as a petition for writ of certiorari. The jurisdictional basis of Plaintiffs' challenge to the ZBA's decision to deny their special use permit is Iowa Code section 414.15, which states,

---

**15.** Whether exhaustion of this appeals process is required has not been briefed, and will therefore be decided another day. *See New Orleans Pub. Serv.,* 491 U.S. at 369 n. 4, 109 S.Ct. 2506 (noting that the Court has "never squarely faced the question" of whether *Younger* abstention applies to a final administrative action which is appealable to a state court (citing *Dayton Christian Sch.,* 477 U.S. at 629, 106 S.Ct. 2718)).

Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment under the provisions of this chapter, or any taxpayer, or any officer, department, board, or bureau of the municipality, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

Iowa Code § 414.15. The statute does not restrict the "grounds of the illegality" which may be considered. *See id.* Petitions for writs of certiorari are also available when "an inferior ... officer, exercising judicial functions, is alleged to have exceeded proper jurisdiction or otherwise acted illegally." Iowa R. Civ. P. 1.1401; *see also Waddell v. Brooke,* 684 N.W.2d 185, 189–90, 191 (Iowa 2004) (considering in a certiorari action whether Mayor Brooke improperly removed an individual from the ZBA).

Constitutional challenges can be, and have been, challenged in actions initiated in a manner like the Plaintiffs'. *See, e.g., Meyer v. Jones,* 696 N.W.2d 611, 614–16 (Iowa 2005) (analyzing constitutional challenges in an action initiated by a petition for writ of certiorari); *Sojka v. Zoning Bd. of Adjustment for Harlan,* 698 N.W.2d 336 (table), 2005 WL 973793, at *9–*12 (Iowa Ct.App.2005); *Strother v. Linn County Bd. of Adjustment,* No. 2–049, 2002 WL 987551, at *2 (Iowa Ct.App. May 15, 2002) (same); *Delaney v. Bd. of Adjustment of City of Waterloo,* No. 00–1034, 2001 WL 912651, at *4–*5 (Iowa Ct.App. Aug.15, 2001) (same); *see also Molo Oil Co. v. City of Dubuque,* 692 N.W.2d 686, 690–94 (Iowa 2005) (analyzing the constitutionality of a zoning decision in an appeal of an action "tried ... as a certiorari proceeding"). *But cf. LDMG Corp. v. Webster County Bd. of Adjustment,* 674 N.W.2d 684 (table), 2003 WL 22697730, at *1–*2 (Iowa Ct.App. 2003) (noting that a state district court may sever constitutional claims from a writ of certiorari action). Plaintiffs' state court filings in fact do contain many of the same alleged constitutional violations asserted here. At bottom, Plaintiffs have not presented evidence that their constitutional claims would be barred by the procedures used to resolve their state court actions, and the procedural framework indicates the contrary.

Turning to the treatment of Plaintiffs' liquor license applications, judicial proceedings began when Plaintiffs filed their applications, *see Night Clubs,* 163 F.3d at 479–80, and culminate with appeals procedures available to a dissatisfied party as set forth in the Iowa Alcoholic Beverages Control Act, *see* Iowa Code § 123.32(5)-(7). As with the business license and special use permit applications discussed above, Plaintiffs have not offered evidence that the available avenues of appeal foreclose the submission of any constitutional challenges. As a result, the Court must conclude the avenues available to Plaintiffs will afford them adequate opportunities to have their federal constitutional claims heard and resolved.

### 2. Exceptions to *Younger.*

Satisfaction of the trio of factors above, however, does not end the analysis. Even if the three *Younger* abstention prongs are met, a federal court should not abstain "if it detects 'bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate.'" *Night Clubs,* 163 F.3d at 479 (quoting *Middlesex,* 457 U.S. at 435, 102 S.Ct. 2515); *accord Aaron,* 357 F.3d at 778; *Cedar Rapids Cellular Tel., L.P. v. Miller,* 280 F.3d 874, 879 (8th Cir.2002); *Neal,* 112 F.3d at 357; *Riney,* 21 F.3d at 797; *see generally Trainor,* 431 U.S. at 442 n. 7, 97 S.Ct. 1911

(collecting cases).[16] The deference owed to state proceedings vanishes if they are used for such an improper purpose. *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 899 (8th Cir.2000). This exception is only available in truly extraordinary circumstances:

> Only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there by any relaxation of the deference to be accorded the state criminal process. The very nature of 'extraordinary circumstances,' of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

*Kugler v. Helfant*, 421 U.S. 117, 124–25, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975) (footnote omitted); *see Moore*, 442 U.S. at 433, 99 S.Ct. 2371 (extending *Kugler* to civil situations).

Cases upholding the conclusion that bad faith has spoiled an application of *Younger* only lightly season our circuit's jurisprudence. In one such case, the court reviewed the grant of injunctive relief in favor of groups seeking to construct a low-level radioactive waste disposal facility in Nebraska. *See Entergy*, 210 F.3d at 890–91. Following numerous delays in the consideration and the ultimate denial of their license applications, the applicants demonstrated "Nebraska did not provide, or intend to provide, impartial consideration of those applications." *Id.* at 899. Instead, Nebraska "used its administrative process wrongfully to delay and deny the license, at considerable expense to" the other parties involved. *Id.* Importantly, the applicants had accumulated a great deal of evidence detailing how the state adminis-

16. This exception most readily applies in criminal settings where a state official uses a prosecutorial proceeding to harass someone who later sues the state official in federal court. *See Younger*, 401 U.S. at 48, 91 S.Ct. 746 (recognizing that a federal court could halt state criminal proceedings if threatened criminal proceedings were " 'not made with any expectation of securing valid convictions, but rather [as] part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass appellants and discourage them and their supporters from asserting and attempting to vindicate [certain] constitutional rights' " (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 482, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965))); *Trainor*, 431 U.S. at 446, 97 S.Ct. 1911 (same); *see generally Lewellen v. Raff*, 843 F.2d 1103, 1112 & n. 10 (8th Cir.1988) (surveying "the types of impermissibly-motivated state prosecutions that have been held enjoinable under the bad faith exception to the *Younger* doctrine" (discussing *Wichert v. Walter*, 606 F.Supp. 1516, 1521 (D.N.J.1985))). In fact, our circuit has noted that although "the Supreme Court has not ruled out use of the bad faith exception in civil cases, it has never directly applied the exception in such a case." *Aaron*, 357 F.3d at 778 (citing *Huffman*, 420 U.S. at 611, 95 S.Ct. 1200). The court then proceeded to analyze whether the extraordinary circumstances the exception requires existed in a civil case, implicitly opening the door for its availability in such cases. *Id.*

Another exception to *Younger* exists if "the necessary irreparable injury can be shown even in the absence of ... bad faith and harassment," such as if a statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " *Younger*, 401 U.S. at 53–54, 91 S.Ct. 746 (quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 85 L.Ed. 1416 (1941)); *accord Trainor*, 431 U.S. at 446–47, 97 S.Ct. 1911. Plaintiffs do not press application of this last principle here.

trative processes were used wrongfully. *See generally id.* at 891–95.

In their filings, Plaintiffs state, baldly, that the exception "clearly is applicable." Reply, at 4. At oral argument, Plaintiffs attempted to buttress this argument by referencing the same conduct forming the basis of their Complaint, arguing the City's treatment of their special use permit, business license, and liquor license applications has been carried out in bad faith, evidenced by a "selective application" of the City's ordinances against Orozco.

This argument is factually deficient. First, the Plaintiffs have not alleged that one other new business has applied for and been granted a new liquor license or special use permit for a business in the Village. Second, the Plaintiffs have not alleged the moratorium, once legally effective, has been applied to any other new business wishing to open in the Village. Finally, the Plaintiffs' allegation that the City has somehow targeted Orozco is belied by their own papers: Las Bananas, a business with which Orozco is affiliated, was granted an annual liquor license renewal on April 19, 2006. Hr'g Ex. 27, at 5. This record is simply insufficient to invoke an exception that "must be construed narrowly and only invoked in 'extraordinary circumstances.'" *Aaron,* 357 F.3d at 778 (quoting *Younger,* 401 U.S. at 53–54, 91 S.Ct. 746).

The Court concludes the Plaintiffs have not provided a persuasive record to support the invocation of the bad faith exception to *Younger.*

### 3. Manner of Abstention.

The final issue is whether dismissal or a stay is appropriate. On one end of the spectrum are federal actions where plaintiffs seek only equitable relief. In those situations, *Younger* usually compels dismissal. *See Gibson,* 411 U.S. at 577, 93 S.Ct. 1689 (in a case where only equitable relief was sought, *Younger* "contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts"); *Night Clubs,* 163 F.3d at 477 n. 1 (*"Younger . . .* directs federal courts to abstain from accepting jurisdiction in cases where equitable relief is requested. . . ."); *Coley v. Clinton,* 635 F.2d 1364, 1371 (8th Cir. 1980) ("[T]he doctrines of comity and federalism set forth in *Younger* preclude federal court intervention by way of injunctive or declaratory relief . . . ."); *see also Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 718, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (noting "that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief"). This principle flows from the historical fact that federal courts' equitable powers preceded congressional statutes conferring jurisdiction on the federal courts. *See New Orleans Pub. Serv.,* 491 U.S. at 359, 109 S.Ct. 2506. As a result, statutes conferring jurisdiction did not curtail "discretion in determining whether to grant certain types of relief—a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted." *Id.* at 359, 109 S.Ct. 2506. Where relief is not discretionary, dismissal is not permitted. *E.g., Silverman,* 267 F.3d at 792.

At the other end of the spectrum, where only damages are sought, abstention principles "only permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether." *Quackenbush,* 517 U.S. at 719, 116 S.Ct. 1712 (emphasis in the original); *see id.* at 730, 116 S.Ct. 1712 ("In those cases in which we have applied traditional abstention principles to damages actions, we have only permitted a federal court to withhold action until the state proceedings have concluded; that is, we have permitted federal courts applying ab-

stention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether." (quotation marks and citation omitted)); *see Warmus v. Melahn,* 110 F.3d 566, 567 (8th Cir.1997) ("[I]n actions at law ... abstention principles permit federal courts only to enter an order that stays the adjudication pending completion of state proceedings, not one that dismisses the federal action altogether." (quotation marks omitted)); *Paskon v. Bay,* 92 F.3d 1189 (table), 1996 WL 396592, at *1–*2 (8th Cir.1996) (per curiam) (reversing dismissal of an action in which only monetary damages were sought); cf. *Jefferson County, Ala. v. Acker,* 527 U.S. 423, 435 n. 5, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) (dicta) ("[I]n a case seeking damages, rather than equitable relief, a federal court may not abstain, but can stay the action pending resolution of the state-law issue." (citing *Quackenbush,* 517 U.S. at 719–21, 116 S.Ct. 1712)). In this manner, "[c]laims for damages are different" than claims for equitable relief, and where they are sought, "a federal court may not decline to exercise jurisdiction over them unless the damages sought would require a declaration that a state statute is unconstitutional." *Stroud,* 179 F.3d at 603 (citing *Quackenbush,* 517 U.S. at 719, 730, 116 S.Ct. 1712).

This case lies somewhere in the middle. Here, Plaintiffs seek a blend of equitable and monetary relief. In similar cases, our circuit has been clear. "When monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed." *Stroud,* 179 F.3d at 603–04.[17]

Finally, even where the three *Younger* prongs have been satisfied, our circuit counsels the exercise of "an abundance of caution" before dismissing, particularly if "there is a possibility that the parties will return to federal court." *Cedar Rapids Cellular Tel.,* 280 F.3d at 882–83; *see Fuller,* 76 F.3d at 960–61 (requiring a stay where a return to federal court was possible after a state court determined whether a compensation insurance plan was covered by ERISA); *see also Stroud,* 179 F.3d at 604 ("As long as there may be issues which will need to be determined in federal court, a stay rather than a dismissal is the preferred procedure to use in abstaining."). Here, Plaintiffs may return to federal court following the conclusion of the state court actions to seek any monetary damages that may ultimately be unavailable there. Additionally, should the

**17.** If a preliminary finding that a statute is unconstitutional is required before damages can be awarded, the case should be dismissed because such a request for damages is "akin to an action for declaratory relief because the damages sought could not be awarded without first, in effect, declaring that the state [statute] [i]s unconstitutional." *Amerson v. Iowa,* 94 F.3d 510, 513 (8th Cir.1996). Thus, an "incidental insertion of a general claim for damages will not suffice to prevent dismissal of a § 1983 case." *Id.* Fortunately for the Plaintiffs, this exception is "very limited," and generally requires conduct challenged in the federal proceeding to be intertwined with that forming the basis of a state court judgment such that a review of the state court decision would be required. *See id.* at 512–14 (dis-

missal of federal claims required where the "predominant issue" morphed into a child custody dispute); *see also Warmus,* 110 F.3d at 568 (recognizing that a review of a state court order was unnecessary to assess damages claims centering on conduct occurring before issuance of the state court order, but remanding for a determination of whether a stay was appropriate). The conduct challenged here is not of this type. Plaintiffs' monetary claims largely result from an inability to open their business as a result of allegedly wrongful denials of their license applications. *See* Compl., ¶¶ 82–85; *id.* at 19 ¶¶ C, F–H. Declaring the City's business license and liquor license scheme unconstitutional is not required to reach the conclusion that Plaintiffs are entitled to monetary relief.

City wrong Plaintiffs after the expiration of the moratorium by denying their license in an improper way or wrongfully delay its consideration, the possibility remains that Plaintiffs may return here to challenge that decision. Cf. *Linn County v. City of Hiawatha,* 311 N.W.2d 95, 98–99 (Iowa 1981) (leaving open the question of whether federal court is an appropriate place to seek a writ of certiorari under Iowa Code § 414.15 even if no independent basis for federal jurisdiction exists). A stay of Plaintiffs' equitable and monetary claims is therefore required. *See Stroud,* 179 F.3d at 603–04; *Newell v. Rolling Hills Apartments,* 134 F.Supp.2d 1026, 1039–40 (N.D.Iowa 2001).

### C. Conclusion.

In light of the state and municipal procedures available to, and being pursued by, Plaintiffs, the strong and legitimate state interests involved, and the apparently adequate forum for presentation of their legal claims, the Court concludes the guideposts governing and principles underlying *Younger* abstention have been met. However, instead of dismissing Plaintiffs' Complaint, the Court exercises abstention by staying this action pending resolution of Plaintiffs' state court actions as well as the outcome of Plaintiffs' liquor license application before the Davenport City Council following the expiration of the moratorium. To the extent Plaintiffs have been wronged in a way not remediable in a state forum, they may return and continue their prosecution of this action at that time.

### III. Plaintiffs' Motion for Preliminary Injunction.

As noted above, Plaintiffs have moved for a preliminary injunction, asking the Court to enjoin enforcement of the moratorium. Plaintiffs also wish the Court to "mandate[e] that the Plaintiffs' liquor license application be heard immediately by the City and that such license issue."

In light of the Court's conclusion that permitting Plaintiffs to continue to litigate their federal claims would improperly interfere with ongoing state judicial proceedings, it would be inconsistent to now interfere with those proceedings by way of an injunction. As a result, Plaintiffs' Motion for Preliminary Injunction must be **denied.**

### III. Conclusion.

The City's Motion to Dismiss (Clerk's No. 5) must be **granted in part and denied in part.**[18] The present action is stayed pending the resolution of the state court actions and the City's treatment of Plaintiffs' liquor license application following the expiration of the moratorium. Plaintiffs' Motion for Preliminary Injunction (Clerk's No. 2) therefore must be **denied.**

The parties are directed to file a status report with this court by December 1, 2006, or at such earlier time as circumstances may change.

**IT IS SO ORDERED.**

---

**18.** The City's motion is denied in part based upon the nature of the court action requested in the motion itself. The Court does note at oral argument counsel for the City modified their position to include a request for a stay in the event the Court determined full dismissal was not the appropriate remedy at this time.